Chief Judge Fuld.
Charged by information in the Criminal Court of the City of New York with the misdemeanor of leaving the scene of an accident (Vehicle and Traffic Law, § 600), the defendant was tried, upon her demand (N. Y. City Crim. Ct. Act, § 40), “ in a part of [that] court held by a panel of three * * * judges"[1], which consisted of Judge Silver, who presided, and Judges Phipps and Shalleck. After hearing the evidence, the panel reserved decision and disbanded as a court. Some months thereafter, the case was placed on the calendar for decision. The panel, sitting on that day, consisted of Judge *610 Breslih, presiding, and Judges Castaldi and Shallegk. The presiding judge announced that the defendant had been adjudged guilty by a divided court; that Judges Silver and Phipps had voted for conviction and that Judge Shalleck had dissented and voted to acquit. Judge Shalleck immediately stated that he and the two judges who had been on the panel with him had never conferred together, that he had never spoken to Judge Phipps and that, prior to Judge Breslih’s announcement, he had no knowledge of Judge Phipps’ vote. Counsel, who was in the courtroom with his client, thereupon moved to set aside the conviction upon the ground, among others, that after the trial had been concluded the three-judge court never met en banc and never consulted or deliberated together. The motion was referred to the court which had tried the case, Following a hearing, the application was denied, over Judge Shalleck’s dissent,[2] and, on appeal, the Appellate Term affirmed the conviction and the disposition of the motion.
There can be no doubt, on the record before us, that the three judges who made up the panel which tried the defendant never met together after they had reserved decision and disbanded. While there was a “ casual ” meeting and “ perfunctory ” discussion between two of the judges, not a word was exchanged between- Judge Phipps and Judge Shallegk concerning the case and, so far as appears, neither of them read anything which the other may have written. In short, the determination of each judge was arrived at separately and independently without any en banc meeting or joint consultation, and without the slightest opportunity being afforded to Judge Shallegk to discuss the case with Judge Phipps and endeavor, by arguments on the facts or on the law, to convince him that he was wrong and should vote for an acquittal.
We share the reluctance, expressed by the Appellate Term, to prescribe the form or manner of a court’s deliberative process but that does not justify abdication of our responsibility as an *611 appellate court to assure to a defendant not only a fair trial but a judgment properly and lawfully arrived at. That a determination must be made by a court, sitting and acting as an entity, and not by its individual members hardly requires elaboration. Particularly in a case such as the present, where one member of the three-judge panel holds a view at odds with that of his associates, a regard for the judicial process, as well as the applicable statute (N. Y. City Crim. Ct. Act, §§ 40, 42), compels the conclusion that the three judges must consult and deliberate together once the difference of opinion appears. To hold otherwise would not only negate the concept of a court, qua court, but would deny the importance of discussion and debate to the decision-making process. Experience has taught that there is no substitute for argument and the exchange of variant views and ideas.
Indeed, our court quite recently, though in a different context, declared — quoting with approval from the 1880 case of People ex rel. Sammons v. Wandell (21 Hun 515, 516) — that, where a court is composed of a panel of three judges, “ ' the law requires * * * not the concurrence but the presence and deliberation of all three. ’ ” (People v. DeCillis, 14 N Y 2d 203, 205.) And in Matter of Kings County El. R. R. Co. (78 N. Y. 383) —where a three-judge panel at General Term of the Supreme Court had arrived at a determination without joint consultation or deliberation in passing upon a motion to confirm a report — this court held that the decision was unauthorized (78 N. Y., at pp. 385-386): “ It is apparent from the facts stated that no personal consultation was had among the three justices who constituted the General Term when the motion to confirm the report was made, and that only two of them were present when the decision was actually made and filed. * * * The order states that there was no consultation of the judges, and that the judge who was absent never read the opinion written by one of his associates, and that the case was not decided while the three judges were together. Had there been a consultation, the judge who sent his written consent to the confirmation of the report might have been convinced that he was wrong and the result changed.”
This requirement of consultation and deliberation, at least where the judges comprising the court entertain variant and *612 different views, stems (as noted above) from the very nature of the judicial process. It cannot be doubted, as General Term of the Superior Court wrote almost 100 years ago (Parrott v. Knickerbocker Ice Co., 38 How. Prac. 508, 513), “ that the practical effect of consultations and conferences in relation to questions which a court is called on to decide, is both useful to the court and beneficial to the parties. It must be within the experience of every member of the judiciary, who has occupied a seat for a few years upon the bench, that views have been shaken and opinions changed at consultation meetings. A fact which has been overlooked, or not appreciated, may change a theory or shed new and different light on the case. The investigations of one judge, more diligent than his associates, may discover a leading case or a new statute, the discussion of which may reverse opinions previously formed; and, generally, more enlarged and enlightened views are sure to be obtained and expressed. ’ ’ (See, also, Matter of Kings County El. R. R. Co., 78 N. Y. 383, supra; Corning v. Slosson, 16 N. Y. 294, 297; Oakley v. Aspinwall, 3 N. Y. 547; People v. Sanabria, 42 Misc 2d 464, 472; People ex rel. Sammons v. Wandell, 21 Hun 515, 516, supra; Pell v. Ulmar, 21 Barb. 500, 506; Carter’s Estate, 254 Pa. 518, 527.)
This does not, of course, mean that the judges are prohibited from making a decision and announcing it from the bench immediately after the trial is concluded. Just as a jury may, after hearing a charge, ‘ ‘ either decide in court, or may retire for deliberation ” (Code Crim. Pro., § 421), .so the panel of judges may, by discussion and vote, arrive at its determination without leaving the courtroom. The necessities of the judicial process and the statute (N. Y. City Crim. Ct. Act, §§ 40, 42) are met by the en beme sitting and the opportunity it affords for joint discussion and deliberation.
In sum, then, the judges comprising a panel owe it both to the parties and to themselves to consult with each other once it appears that one of their number has expressed or indicated a view different from that of his associates. How long or how short such a conference need be, what form it is to take, are matters with which an appellate court will not concern itself. However, in the present case, the complete absence of any joint consultation or deliberation after one of the judges had regis *613 tered his vote for acquittal required a grant of the motion to set aside the conviction.
The judgment of conviction should be reversed and a new trial ordered.
Judges Van Voorhis, Burke, Scileppi, Bergan, Keating and Breitel concur.
Judgment reversed, etc.

. Under the New York City Criminal Court Act, a defendant, charged with a misdemeanor, has a right to be tried “in a part of the court held by a panel of three of the judges thereof ” (§ 40, subds. [1], [2]) and it is further provided that, when the trial is before such a panel, “any determination * * * or judgment of two of them shall be the determination * * * or judgment of the court ” (§ 42, subd. [2]),

. It was the view of Judge Shalleck that the three judges who comprise a panel are under a duty to confer with each other before arriving at a determination, that there was no consultation in this case and that, absent such consultation or deliberation, there could be no valid judgment or other determination.