[Cite as *Kisielius v. Kisielius*, 2009-Ohio-4624.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

JANINA SVIOKLINE KISIELIUS,

    PLAINTIFF-APPELLEE,

    v.                       CASE NO.  17-09-05

VYTAS KISIELIUS, EXECUTOR, ET AL.,

    DEFENDANTS/THIRD PARTY
    PLAINTIFFS-APPELLANTS,

    v.                       O P I N I O N

EDWARD D. JONES & COMPANY,

    THIRD PARTY DEFENDANT-APPELLEE.

---

JANINA SVIOKLINE KISIELIUS,

    PLAINTIFF-APPELLEE,

    v.                       CASE NO.  17-09-11

VYTAS KISIELIUS, EXECUTOR, ET AL.,

    DEFENDANTS/THIRD PARTY
    PLAINTIFFS-APPELLANTS,

    v.                       O P I N I O N

EDWARD D. JONES & COMPANY,

    THIRD PARTY DEFENDANT-APPELLEE.

Case No. 17-09-05, 17-09-11

---

**Appeal from Shelby County Common Pleas Court**
**Trial Court Nos. 07CV352 and 07CV000352**

**Judgments Affirmed**

**Date of Decision:   September 8, 2009**

---

**APPEARANCES:**

   *Keith M. Schnelle*  **for Appellants**

   *James L. Thieman*  **for Appellee**

**SHAW, J.**

   **{¶1}** Appellant Vytas Kisielius ("Vytas"), acting as the executor of the estate of Alfonsas Kisielius ("Alfonsas") and as the successor trustee of the Alfonsas Kisielius Revocable Trust ("the trust") appeals from the August 21, 2008 Decision of the Court of Common Pleas of Shelby County, Ohio granting summary judgment in favor of Appellee Janina Sviokline Kisielius ("Janina") and the April 3, 2009 Decision of the Court of Common Pleas of Shelby County, Ohio denying Vytas' Civil Rule 60(B) motion for relief from judgment.

{¶2} Alfonsas and Janina were married on July 23, 1999. Prior to marrying, Janina and Alfonsas entered into an Antenuptial Agreement dated July 16, 1999. The antenuptial agreement provided, in pertinent part, as follows:

> **Upon the death of Alfonsas, if he shall die before Janina, she shall be paid the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000) from probate or non-probate assets.**
>
> **Janina shall have the right to use and occupy any primary and secondary residences of Alfonsas for ten (10) years from his date of death. Janina shall not be obligated to pay rent but shall pay the taxes, insurance, maintenance, utilities and up-keep of such residence.**
>
> **\*\*\***
>
> **Janina will make no additional claims on the probate or non-probate assets of Alfonsas including but not limited to assets in his revocable living trust dated November 30, 1998, individual IRA accounts, individual brokerage accounts and individual annuities.**
>
> **\*\*\***
>
> **The Parties may from time to time during the marriage establish common incidents of ownership of property, real, personal and mixed, and make gifts to each other and acquire property together, in joint names, with right of survivorship or as tenants in common, none of which shall be considered a waiver or amendment of the terms of this Agreement, except to the extent that either Party should modify his or her Last Will and Testament. However, to the extent that either party should modify his or her Last Will and Testament, if it varies from the terms of this Agreement so as to give more to the surviving spouse than the first-dying spouse is obligated to make by this Antenuptial Agreement, such modification shall constitute a partial waiver, limited to the specific assets mentioned in a Last Will and Testament hereafter executed by Alfonsas or Janina.**

**{¶3}** It appears, although not expressly clear from the record, that during the course of the marriage Alfonsas and Janina resided predominately in a Florida condominium. It also appears that although Alfonsas owned the condominium in Sydney, Ohio, the couple did not spend much time at the Sydney condominium.

**{¶4}** During the course of the marriage, several financial transactions occurred that are pertinent to the case at hand. Alfonsas took a $100,000 loan from the trust. It appears from the record that this loan could have been taken to make improvements on the Florida property. However, no writing was ever created expressing the purpose of the loan and no loan documents were ever signed delineating terms of repayment. Additionally, it appears that the loan was taken from the trust solely by Alfonsas, as Janina had no control over the trust. Moreover, Janina did not sign any papers evidencing a loan.

**{¶5}** Also during the course of the marriage, on January 17, 2001, Alfonsas and Janina opened a joint Money Market Savings Account at the Bank of America.

**{¶6}** Janina and Alfonsas remained married until Alfonsas' death on January 31, 2007. Alfonsas died testate. Alfonsas had executed a Last Will and Testament ("the will"), dated November 30, 1998 with several subsequent codicils. Alfonsas had also created The Alfonsas Kisielius Revocable Trust ("the trust") on November 30, 1998 which had several subsequent amendments.

**{¶7}** The first codicil to Alfonsas' will was executed on September 6, 2000. The first codicil recognized Alfonsas' marriage to Janina and recognized the $100,000 payment in the antenuptial agreement, which was to be paid by the estate or the trust. The first amendment to the trust also recognized the marriage and the $100,000 payment which was specified to come from either the probate estate or the trust.

**{¶8}** On June 8, 2001 Alfonsas executed a second amendment to the trust, which directed the Florida condominium, along with all furnishings and housegoods, be transferred to Janina upon his death.

**{¶9}** Alfonsas made a second codicil to his will on September 28, 2004. The second codicil recognized the transfer of the Florida condominium to Janina, and named Janina as the alternate executor of the will, should Vytas be unable or unwilling to act as executor.

**{¶10}** After Alfonsas' death, Vytas, his son, opened Alfonsas' estate in the Probate Court of Shelby County, Ohio on March 8, 2007. Vytas was appointed as the executor of the estate on March 9, 2007.

**{¶11}** It appears from the record before this court that in July of 2007 Janina filed a claim against the estate for $100,000, which was rejected in August of 2007.

{¶12} On October 11, 2007 Janina filed a complaint for declaratory judgment and money damages claiming that she was entitled to receive $100,000 pursuant to the terms of the antenuptial agreement and claiming that she was entitled to the Bank of American Money Market Savings Account, which vested in her name on Alfonsas' death, and according to Janina, should not be considered an asset of Alfonsas' estate.

{¶13} On November 20, 2007 Vytas filed an answer and counterclaim in his capacity as executor of Alfonsas' estate and a third-party complaint for declaratory judgment in his capacity as executor and also in his capacity as trustee. In his counterclaim, Vytas claimed that Janina committed improper endorsement and conversion and therefore was liable to the estate for $80,000. In the third-party complaint Vytas requested that Janina be required to return the $80,000 she deposited into the joint account, that the court enter declaratory judgment stating that Janina had no interest in the Sydney condominium and that the Florida condominium would be transferred to her subject to the balance due on the home loan, that the court order that the IRA not be disbursed until the trial court ruled on the merits of the third-party claim, that the court enter declaratory judgment that Janina was not entitled to any of the estate of Alfonsas or Alfonsas' IRA, and that the court enter declaratory judgment stating that Janina was only entitled to

$100,000 pursuant to the terms of the antenuptial agreement. Janina filed an answer and reply on December 18, 2007.

{¶14} On April 23, 2008 Janina filed a motion for summary judgment. Vytas filed a memorandum in opposition on May 13, 2008 and Janina filed a reply memorandum on May 20, 2008. An oral argument was held on the motion for summary judgment on July 22, 2008. Both Vytas and Janina filed briefs after the hearing.

{¶15} On August 21, 2008 the trial court granted summary judgment in favor of Janina. On August 27, 2008 Janina filed a motion for prejudgment interest. Vytas filed a motion in opposition on September 10, 2008.

{¶16} On February 13, 2009 Vytas filed a motion for relief from judgment pursuant to Civ. R. 60(B). Janina filed her motion in opposition on February 26, 2009. On April 3, 2009 the trial court entered a ruling denying Vytas' Civ. R. 60(B) motion.

{¶17} Vytas now appeals, asserting six assignments of error.

**ASSIGNMENT OF ERROR I**
**THE TRIAL COURT ERRED WHEN IT REQUESTED, ALLOWED AND CONSIDERED ADDITIONAL EVIDENCE AFTER THE FILING OF THE MOTION FOR SUMMARY JUDGMENT AND THEN OVERRULED VYTAS'S MOTION TO DISREGARD ADDITIONAL EVIDENCE.**

**ASSIGNMENT OF ERROR II**
**THE TRIAL COURT ERRED WHEN IT DETERMINED THERE WAS NO GENUINE ISSUE OF MATERIAL FACT**

ABOUT WHO OWNED THE PROCEEDS OF THE SAVINGS
ACCOUNT IN FLORIDA AND THAT IT WAS A JOINT
ACCOUNT WITH RIGHTS OF SURVIVORSHIP.

**ASSIGNMENT OF ERROR III**
THE TRIAL COURT ERRED WHEN IT DETERMINED VIA
A MOTION FOR SUMMARY JUDGMENT THAT DESPITE
THE THE [SIC] IMPROPER ENDORSEMENT AND
CONVERSION BY JANINA OF THE IRA CHECK, IT WAS
PROPERLY PAYABLE TO HER AND WAS NOT AN
OFFSET AGAINST THE ANTENUPTIAL AGREEMENT.

**ASSIGNMENT OF ERROR IV**
THE TRIAL COURT ERRED AS A MATTER OF LAW
WHEN IT DETERMINED THAT THE $80,000 IRA CHECK
SHOULD NOT BE AN OFFSET FROM THE $100,000 GIFT
TO JANINA DESCRIBED IN THE ANTENUPTIAL
AGREEMENT.

**ASSIGNMENT OF ERROR V**
THE TRIAL COURT ERRED WHEN IT DETERMINED THE
FLORIDA CONDOMINIUM SHOULD NOT BE
TRANSFERRED TO JANINA SUBJECT TO THE HOME
IMPROVEMENT LOAN WHEN GENUINE ISSUES OF
FACT STILL EXISTED.

**ASSIGNMENT OF ERROR VI**
THE TRIAL COURT ERRED WHEN IT OVERRULED THE
CIV. R. 60(B) MOTION OF APPELLANT.

{¶18} For ease of discussion, we elect to address Vytas' assignments of

error out of order.

*First Assignment of Error*

{¶19} In his first assignment of error, Vytas argues that the trial court erred

when it considered additional evidence in ruling on Janina's motion for summary

judgment. Specifically, Vytas argues that the trial court erred in overruling his motion to disregard additional evidence, filed on July 15, 2008. In his motion and on appeal, Vytas specifically argues that the trial court erred by allowing Janina to file a copy of the signature card of the Bank of America joint account and copies of the warranty deeds to the Florida and Sydney condominiums.

{¶20} As an initial matter, we note that Civil R. 56 provides for supplementation of the record, as follows:

> **(E) Form of affidavits; further testimony; defense required**
>
> **Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. *The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits*. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.**

(emphasis added).

{¶21} As this Court has previously recognized, supplemental evidence is a permissible tool to support a motion for summary judgment. See, *Feichtner v. Kalmbach Feeds, Inc.,* 3rd Dist. No. 16-04-09, 2004-Ohio-6048 at ¶11. Moreover,

this Court notes that the Bank of America Signature Card had already been submitted to the trial court as part of Janina's original complaint. The additional submission was only to put on record a copy that was more legible.

**{¶22}** Additionally, with regard to the condominiums, ownership of the condominiums was never at issue and in fact, in his third-party complaint, Vytas asserted that ownership of the condominiums was held by the trust, which was evidenced by the deeds. Accordingly, we cannot find that the trial court acted in any manner contrary to law in allowing the filing of supplementary evidence that was in accordance with Civ. R. 56 and already in the record. Vytas' first assignment of error is overruled.

*Sixth Assignment of Error*

**{¶23}** In his sixth assignment of error, Vytas argues that the trial court erred in overruling his Civ. R. 60(B) motion for relief from judgment. The Supreme Court of Ohio has determined that "[a] motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When

applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

{¶24} Civ. R. 60(B) specifically sets forth the grounds for relief from judgment and provides as follows:

> **On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.**

In order to prevail on a motion brought pursuant to Civ.R. 60(B), "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 351

N.E.2d 113 at paragraph two of the syllabus. All three elements must be established, and the test is not fulfilled if any one of these requirements is not met. *ABN AMRO Mtge. Group, Inc. v. Jackson*, 159 Ohio App.3d 551, 556, 824 N.E.2d 600, 2005-Ohio-297.

**{¶25}** In the present case, Vytas essentially argues that his motion for relief from judgment should have been granted because he was dissatisfied with the trial court's grant of summary judgment in favor of Janina. In support of his motion, Vytas does not cite any of the first four grounds for granting relief from judgment, as articulated in Civ. R. 60(B). Instead, Vytas argues that he is entitled to relief under the "catch all provision," which allows for relief for any other reason that justifies relief. However, as will be discussed more fully in this court's disposition of Vytas' second, third, fourth, and fifth assignments of error, this Court cannot find any error in the trial court's grant of summary judgment. Therefore, we cannot find an abuse of discretion in the judgment of the trial court denying Vytas' Civ. R. 60(b) motion. Accordingly, Vytas sixth assignment of error is overruled.

*Second, Third, Fourth, and Fifth Assignments of Error*

**{¶26}** Our review of the record reveals that the trial court has thoroughly addressed all of the relevant factual and legal issues pertaining to Vytas' second, third, fourth, and fifth assignments of error in its judgment entry in which it granted Janina's motion for summary judgment. Accordingly, for the purposes of

ruling on Vytas' assignments of error herein, we hereby adopt the well-reasoned Decision/Order of the trial court on Janina's motion for summary judgment dated August 21, 2008, incorporated and attached hereto as Exhibit A, as our opinion in this case.

{¶27} For the reasons stated in the final judgment entry of the trial court, attached and incorporated herein as Exhibit A, Vytas' second, third, fourth, and fifth assignments of error are overruled.

{¶28} Based on the foregoing, the August 21, 2008 and April 3, 2009 Decisions of the Court of Common Pleas of Shelby County, Ohio are affirmed.

*Judgments Affirmed*

**PRESTON, P.J., concur.**

**/jlr**

**ROGERS, J., Concurring in Part and Dissenting in Part**.

{¶29} I concur with the majority on the first, third, and fifth assignments of error. I also concur with the result reached by the majority on the sixth assignment of error. However, I respectfully dissent with the reasoning and result on the second and fourth assignments of error.

{¶30} In the sixth assignment of error, Appellant argues that the trial court erred in denying the motion for relief from judgment. While I concur that the

motion was properly denied, I would find that the motion was simply an attempt to use Civ.R. 60(B) in lieu of an appeal. The issues raised by Appellant in the motion were all issues that could have been raised in a timely appeal. *State ex rel. McKinney v. Defiance Cty. Court of Common Pleas*, 120 Ohio St.3d 277, 2008-Ohio-6107 ("'A Civ.R. 60(B) motion for relief from judgment cannot be used as a substitute for a timely appeal'"), quoting *Key v. Mitchell*, 81 Ohio St.3d 89, 90-91, 1998-Ohio-643 ("A Civ.R. 60(B) motion for relief from judgment cannot be used as a substitute for a timely appeal or as a means to extend the time for perfecting an appeal from the original judgment"). This motion should have been denied on that basis.

{¶31} Furthermore, I would consider the second and fourth assignments of error together and sustain these two assignments. The antenuptial agreement provides that Janina "shall" receive the sum of $100,000 from probate or non-probate assets. It further provides that Janina "will make no additional claims on the probate or non-probate assets of Alfonsas including but not limited to assets in his revocable living trust * * *." Contrary to the conclusion of the trial court and the majority, it appears clear to me that this language places a maximum amount that Janina may claim from the estate and/or trust.

{¶32} Section II, paragraph F, of the antenuptial agreement provides:

**The Parties may from time to time during the marriage establish common incidents of ownership of property, real, personal, and**

**mixed, and make gifts to each other and acquire property together, in joint names, with right of survivorship or as tenants in common, none of which shall be considered a waiver or amendment of the terms of this Agreement, except to the extent that either Party should modify his or her Last Will and Testament. However, to the extent that either party should modify his or her Last Will and Testament, if it varies from the terms of this Agreement so as to give more to the surviving spouse than [sic] the first-dying spouse is obligated to make by this Antenuptial Agreement, such modification shall constitute a partial waiver, limited to the specific assets mentioned in a Last Will and Testament hereafter executed * **.**

**{¶33}** Neither the trial court nor the majority have discussed this language, but apparently concluded that Alfonsas had intended a gift of additional monies to Janina by creating a joint savings account. I disagree.

**{¶34}** Alfonsas clearly intended for the Florida condominium to be in addition to the $100,000 because he amended his will and the trust to specify the gift of that property as required by the antenuptial agreement. However, there was no such amendment to the will which would allow the joint savings account in Florida to be excluded from the calculation of her entitlement to $100,000. I would, therefore, find that regardless of the characterization of the ownership of the joint savings account, by the terms of the antenuptial agreement, it counts towards Janina's entitlement to $100,000.

**{¶35}** Accordingly, I dissent from the majority opinion on the second and fourth assignments of error.

FILED
COMMON PLEAS COURT

08 AUG 21 AM 10: 29

SHELBY COUNTY CLERK

IN THE COMMON PLEAS COURT OF SHELBY COUNTY, OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| JANINA SVIOKLINE KISIELIUS | * | CASE NO. 07CV000352 |
| Plaintiff/Third-Party Defendant | * | |
| vs. | * | |
| VYTAS KISIELIUS, EXECUTOR OF THE ESTATE OF ALFONSAS KISIELIUS, DECEASED | * | DECISION/ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Defendant/Counterclaimant/ Third-Party Plaintiff | * | |
| And | * | |
| VYTAS KISIELIUS, SUCCESSOR TRUSTEE OF THE ALFONSAS KISIELIUS REVOCABLE TRUST U/A/D 11-30-98 | * | |
| Third-Party Plaintiff | * | |
| Vs. | * | |
| EDWARD D. JONES & COMPANY, LP | * | |
| Third-Party Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

On April 23, 2008, Plaintiff filed her Motion for Summary Judgment. Pursuant to Local Court Rule this Court issued a scheduling order, the Defendant filed a response, Plaintiff filed a reply to the response, and this Court conducted a hearing for purposes of receiving oral argument on the 22nd day of July, 2008.



**EXHIBIT**
A
1

-16-

Standards for Summary Judgment:

This Court has before it the motions and memoranda of the parties as well as their affidavits, exhibits, and depositions. Rule 56(C) of the Ohio Rules of Civil Procedure provide that, "summary judgment shall be rendered forthwith if the pleadings, depositions,...., show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(C) further provides that, "summary judgment shall not be rendered unless it appears from the evidence or stipulation,..., that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made....." In making that determination, a party against whom the motion for summary judgment is made is "...entitled to have the evidence or stipulation construed most strongly in the party's favor."

For this court to deny a motion for summary judgment there must be issues of material fact. Material facts are determined by the law. Only disputes over facts that might determine the outcome of the case based on the law will preclude the granting of summary judgment. Irrelevant and unnecessary factual disputes will not preclude summary judgment.[1]

The facts necessary to a decision in this case are not in dispute although the legal implications of those facts are much in dispute.

Facts:

The Plaintiff, Janina Kisielius, married Alfonsas Kisielius on July 23, 1999. Prior to the marriage, Janina and Alfonsas entered into an Antenuptial Agreement. That Agreement was executed on July 16, 1999. The Agreement provided that if Alfonsas should die before Janina, Janina would be paid the amount of One Hundred Thousand Dollars ($100,000.00) from probate or non-probate assets and would also be entitled to reside in any primary or secondary residences of Alfonsas for ten years from the date of his death. The Antenuptial Agreement also provided that in addition to the One Hundred Thousand Dollars ($100,000.00) and the right to use primary and secondary residences

---

[1] *Wall v Firelands Radiology, Inc.* (6th Dist., 1995) 106 Ohio App3d. 313, 322, 666 N.E.2d 235, 241.

2

the parties could agree to additional ownership of property and could give other gifts to each other or acquire property together in their joint names.

Subsequent to their marriage on July 23, Alfonsas amended both his Will and his Trust Agreement to reflect his marriage to Janina and to comply with the terms and conditions of the Antenuptial Agreement. The first amendment to the Trust Agreement did not address the issue of the rights of Janina to live in the primary or secondary residences of Alfonsas. The first codicil to Alfonsas' Will executed subsequent to the Antenuptial Agreement provided for the distribution of One Hundred Thousand Dollars ($100,000.00) to Janina, but does not address the issue of the right to live in primary or secondary residences. A second codicil to Alfonsas' Last Will and Testament executed on September 28, 2004, indicated that pursuant to an amendment of the Trust that certain condominium property located in Daytona Beach Shores, Florida, be conveyed to Janina. Neither their Will nor its codicils nor the Trust nor its amendments addressed the Sidney condominium.

Some time after the execution of the antenuptial agreement and the marriage, the parties opened a joint Bank of America money market saving account, Alfonsas amended the beneficiary provisions of his IRA to include Janina, and Alfonsas borrowed $100,000 from the trust.

The Bank of America money market savings account was opened by Alfonsas and Janina on January 17, 2001 in Florida. On February 2, 2004, Alfonsas modified the beneficiaries of his Edward Jones IRA account to make Janina a 20% beneficiary. On January 30, 2004, the trust loaned Alfonsas $100,000. The only documentary evidence of the loan is a line item in the Edward Jones account statement referring to a loan. Vytas in his affidavit refers to the loan as a home improvement loan and there appears to be little dispute that some, if not all, the monies of the loan were to improve the condominium in which Alfonsas and Janina resided.

Both parties concede that the Antenuptial Agreement is a valid and enforceable agreement. However, Defendant disputes claims of Janina to the balance of the Bank of American money market savings account and her right to receive funds as a beneficiary from the decedent's Edward Jones IRA account. Defendant claims that Janina should assume liability of the "home improvement loan" for the condominium located in Florida

3

and rejects the claim of Janina to the right to use and occupy a condominium in Sidney, Ohio.

Antenuptial Agreement:

"If a writing is unambiguous, then it speaks for itself, . . . the court must adhere to the language if the context is clear and unmistakable, and must only resort to extrinsic aid when the language falls short of explaining itself."[2] Even if a contract is subject to some interpretation, summary judgment is an appropriate vehicle to determine that interpretation.[3]

This Court finds that the language of the Antenuptial Agreement is clear and unambiguous. This Court further finds that the language of the Will and the Trust Agreement and their respective codicils and amendments are also clear and unambiguous. As a result, parol evidence of the claimed intention of the parties is not relevant to deciding these issues.

It is clear that the antenuptial agreement calls for the payment of the amount of $100,000.00 from either probate or nonprobate assets. It is clear that the antenuptial agreement provided a right of Janina to use and occupy primary and secondary residences for ten years after the death of Alfonsas. It is also clear that the antenuptial agreement provides that the parties could by gift or other means provide additional property rights to each other.

Alfonsas attempted to carry out the intent of the parties as expressed in the antenuptial agreement by codicils to his will and amendments to the trust agreement. The First Codicil to Alfonsas' will provides for the payment of $100,000.00 to Janina from the estate and if funds are insufficient from the trust. The First Amendment of the trust agreement directs that monies sufficient to pay a total of $100,000.00 be paid from the trust.

Defendant Vytas contends that the $100,000.00 provided for in the antenuptial agreement is a "cap" and Janina can receive no more than that amount. He argues that

---

[2] *Tillotson & Wolcott Co. v Scottdale Mach. & Mfg. Co.* (1926) 23 Ohio App. 399, 400, 155 N.E. 409, 410.
[3] *Skolnick v Cincinnati Insurance Companies*, 11th Dist., No. 2007-T-0088, 2008-Ohio-2319 at ¶ 22; *Novosel v Gusto*, 8th Dist., No. 73575, 1998 WL 842135; *Brause v Royal Maccabees Life Insurance Company*, (3rd Dist., 1993) 88 Ohio App.3d 149, 623 N.E.2d 638.

4

any monies or property received by Janina by gift or otherwise from Alfonsas should be charged against that cap. This Court finds that, rather than a cap, the amount of $100,000 is a minimum payment leaving to Alfonsas and his spouse the opportunity to provide more by gift or contract if they chose.

Paragraph F of the Antenuptial Agreement specifies that the parties may establish common incidents of ownership, make gifts to each other and acquire property in their joint names, including joint property with right of survivorship. The paragraph then states that common ownership, gifts or acquisition of property would not be a waiver or amendment of the terms of the Agreement. Paragraph A(2) of the Antenuptial Agreement specifies that upon death of Alfonsas Janina is to be paid $100,000 out of probate or nonprobate assets. To charge against the $100,000 after acquired properties would be amending that provision in direct contravention of the express intent of the parties.

The last sentence of Paragraph F makes it even clearer that the intent is to guarantee Janina at least $100,000. That sentence says that the parties may modify their Last Will and Testament and that will be a partial waiver of the Antenuptial Agreement, but only if the modification of the Last Will gives more than contemplated by the Antenuptial Agreement.

Accordingly, this court finds that Janina is entitled to $100,000 to be paid from the probate or nonprobate assets of Alfonsas without reduction for any properties jointly owned or gifts given to Janina before his death.

Condominium properties:

The antenuptial agreement was executed on July 16, 1999 by Alfonsas Kisielius and Janina Sviokline. The trust was created November 30, 1998 between Alfonsas Kisielius, Alfonsas Kisielius as Trustee and Vytas Kisielius as successor Trustee. Neither Alsfonsas Kisielius nor Vytas Kisielius in their capacities as trustee or successor trustee executed the antenuptial agreement. On November 30, 1998 Alfonsas Kisielius conveyed by Warranty Deed the Sidney condominium to Alfonsas Kisielius as Trustee of the Alfonsas Kisielius Revocable Trust. On June 8, 2001 Alfonsas Kisielius conveyed

5

the Florida condominium to Alfonsas Kisielius Trustee, and his successors of the Alfonsas Kisielius Revocable Trust.

The Second Amendment to the Trust provides for the conveyance of a certain Florida condominium to Janina and its contents, absolutely and in fee simple. A Third Amendment to the Trust makes no change in those provisions. There is no provision in either the will or the trust agreement or any codicils or amendments that discuss the Sidney condominium.

At the time of the execution of the anetenuptial agreement legal title to the Sidney condominium was held by Alfonsas as trustee. Subsequently the Florida condominium was also transferred to Alfonsas as trustee. At the time of his decease, Alfonsas owned no primary or secondary residences. As a result, the antenuptial agreement cannot be effective to bind property not owned by Alfonsas at the time of his decease.[4] The successor trustee cannot be bound by the terms of an antenuptial agreement to which the trustees were not parties.

Accordingly, this court finds that the provisions of the antenuptial agreement regarding the right to reside in the primary and secondary residences of the deceased are unenforceable because Alfonsas owned no residences at the time of his decease. However, he clearly provided for the conveyance in fee simple to Janina of the Florida condominium by the terms of the amendments to the Trust Agreement.

Bank of America Savings Account:

The antenuptial agreement contemplated that the parties could enter into additional ownerships of property, give gifts to the other, etc. Janina and Alfonsas could enter into a contractual arrangement with the bank for an account in which they were joint owners of the account with right of survivorship. Any monies in a joint and survivorship account would pass to the survivor.

The savings account contract between the bank and Alfonsas and Janina Kisielius appears on its face to create a joint and survivorship account. The deposit agreement states that all parties whose names appear on the account and who have signed the signature card are considered joint owners. The deposit agreement further provides that

---

[4] *McKibben v Samuels* 1st Dist., No. C-980156, 1999 WL 79051.

6

all balances in a joint account are owned by the co- owners as joint tenants with right of survivorship.[5] The signature card recites that by signing the card the parties acknowledge their agreement to the terms of the deposit agreement.

Defendant Vytas argues that the presumption that the account is joint and survivor is a rebuttable presumption. He refers to Fla. Stat. §655.79 and points to the failure of Alfonsas and Janina to specifically designate on the signature card either "joint or survivorship" or "tenants by entireties" as evidence of a factual dispute of the ownership intent. Of course, neither did Alfonsas or Janina specify on the signature card that the account was held as individuals nor indicate that the account was held as tenants in common.[6]

A reading of the language of the statute does not support the contention of Defendant Vytas. Fla. Stat. § 655.79(1) says "Unless otherwise expressly provided . . . a deposit account in the names of two or more persons shall be presumed to . . . vest in the surviving person or persons." A failure to designate on the signature card is not an express provision indicating an intent contrary to joint and survivorship title; it is no expression at all.

Fla. Stat. § 655.79(2) says that the presumption may be overcome, ". . . only by proof of fraud or undue influence or clear and convincing proof of a contrary intent." The only evidence presented to this Court is the bank documents i.e. the deposit agreement and the signature card. The affidavit of Defendant Vytas says nothing about the joint account. Since this court has no evidence before it showing any intent to the contrary, this Court finds that the language of the contract creates a joint and survivorship account that, upon the death of Alfonsas, by operation of law became the sole property of Janina.

Deposit of Edward Jones check:

Also at issue is the authority of Janina to deposit into that account the Edward Jones check made payable solely to Alfonsas. Janina in her affidavit contends that she had the authorization of Alfonsas to endorse and deposit the Edward Jones check in to the

---

[5] Bank of America deposit agreement, 1. Ownership of Accounts, page 2.
[6] The Court notes that there is no check box for "tenants in common" and, if permitted under Florida law, the parties would have had to choose that option by interlineation.

7

joint account.[7] Defendant contends in his affidavit that Janina wrongfully converted the check.[8]

Janina argues that Defendant Vytas' affidavit is insufficient to raise a genuine issue of material fact. In particular, Janina suggests that this Court should not consider the Vytas' affidavit paragraphs #s 20 and 21 couched in language of "I believe or I think."[9]

This Court would agree that statements of belief or opinion are not evidence. In paragraph 20 if the Vytas affidavit said, "I believe . . . was wrongfully converted by Janina . . . ." without more that would not be sufficient. However, the statement of Vytas continues with "since she deposited the IRA check into the Savings Account, with full knowledge that Alfonsas Kisielius lay dying in the hospital and would not use any of the proceeds of the IRA check . . .." That statement constitutes evidence for this Court to consider. However, that evidence even if taken as true does not support Defendant Vytas' contention.

The evidence is undisputed that the Edward Jones check was made payable to Alfonsas Kisielius, that it was delivered, that Janina endorsed her name on the back of the check and then deposited the check in a joint account of Alfonsas and Janina Kisielius. Defendant Vytas contends that Janina wrongfully converted the check because Alfonsas lay dying in the hospital at the time of the deposit of the check. Defendant Vytas has provided no evidence that Alfonsas gave other instructions for the check or that he died before the deposit of the check. Since the check was deposited in an account in Alfonsas' name, albeit jointly with Janina, it cannot be said that the check was wrongfully converted. This very issue was decided in the Florida case of *Sharps v Sharps.*[10]

In the *Sharps* case, the executors of the estate of Benjamin Sharps, deceased, sued his widow for conversion of two checks issued to Benjamin Sharps. One check was deposited in a joint account before his death and the second was deposited in the account after his death. The court said as to the check deposited before his death, "In the absence

---

[7] Janina Kisielius affidavit at ¶s 10 and 11.
[8] Vytas Kisielius affidavit at ¶s 20 and 21
[9] Citing *Haack v Bank One, Dayton, N.A.*, 2nd Dist., No. 16131, 1997 WL 205998.
[10] (Fla. App., 1968) 214 So.2d 492.

8

of proof that the wife was told to deposit the checks elsewhere, her deposit of the $35,000 check in their joint account, prior to the time the husband died, was not a conversion."[11]

No evidence has been submitted that Alfonsas provided other instructions for the check. Even taking the facts as alleged in Defendant Vytas' affidavit as true there is no evidence of a wrongful conversion by Janina.

This Court finds that there is no genuine issue of fact as to the right and authority of Janina to endorse and deposit the proceeds of the Edward Jones account in the Florida savings account.

Assumption of Loan:

The amendments to the Trust Agreement clearly and unambiguously awarded title to the Florida condominium to Janina with no contingencies or conditions. However, Defendant contends that this Court should order Janina to assume and pay a certain loan styled by Defendant as, "the Home Improvement Loan."

In reviewing the pleadings, this Court can find only two references to a loan, other than in the affidavit of Defendant Vytas. The references are in Defendant's exhibit K and L. There is reference is one line under a title of "Loans and Credits" in Exhibit L and a line item described as "loan balance" in Exhibit K. Other than the references in Vytas' affidavit of his "understanding" there is no evidence before this Court of the purpose of the loan or whether or all or only a portion was used on the Florida condominium, or how much benefit Alfonsas may have enjoyed as well as Janina from the proceeds. There is no evidence before this court of any terms or conditions for repayment of the "loan."

Defendant Vytas further contends that, as trustee, he has a right to claim a lien on the condominium because of this loan citing R.C. 5808.16. R.C. 5808.16 addresses powers of a trustee and says, in part, ". . . (R) Make loans out of trust property, including loans to a beneficiary on terms and conditions the trustee considers to be fair and reasonable under the circumstances, and the trustee has a lien on future distributions for repayment of those loans."

Apparently, everyone concedes that the "loan" was to Alfonsas personally. There is no evidence that Janina was in anyway involved personally in the loan. Alfonsas did

---

[11] Id at 495.

9

not secure the repayment of this loan by a mortgage against the condominium; indeed, he could not have since the title to the condominium is in the name of the trustee. This Court finds that the statute contemplates the trustee having a lien against future distributions to the beneficiary who received the loan. Since that beneficiary has died, there can be no future distributions and, therefore, no lien against future distributions.

Defendant Vytas has provided no other authority to support his suggestion that this Court should or can order Janina to assume the obligation. Finally, even if this Court could order Janina to assume the "loan" there is no evidence of what terms or conditions this Court should impose. Accordingly, this Court finds that Janina has no personal obligation to repay the loan and Vytas, as trustee, has no lien on the condominium.

Edward Jones IRA Account:

There is no dispute that on February 2, 2004 Alfonsas changed the beneficiary of the Edward Jones IRA Account to provide that the Janina was to receive a distribution of 20% of the proceeds. As noted previously by this Court, the antenuptial agreement specifically provided that the parties could provide additional gifts or property ownership to the other beyond the minimum amounts called for in the antenuptial agreement. There is nothing before this court to suggest that this court should disturb the clear intent of Alfonsas that the Janina be a 20% beneficiary of the IRA Account.

Conclusion:

This Court finds:

1. The antenuptial agreement executed by Alfonsas Kisielius and Janina Kisielius is a valid and binding agreement and Janina is entitled to a judgment in accordance with its terms and conditions, except that the right to reside in the residences is unenforceable;

2. Janina is entitled to receive as beneficiary 20% of the proceeds of the Edward Jones IRA account;

3. Janina is entitled to receive as the survivor the Bank of America account;

10

4. There is no issue of fact as to the right of Janina to have endorsed and deposited the January, 2007 distribution check from Edward D. Jones and the deposit of the Edward Jones account was not a conversion by Janina;

5. Pursuant to the terms of the trust agreement as amended, Janina is entitled to the Florida Condominium. Janina is not required to assume any "home improvement loan" and the trustee is not entitled to a lien on the condominium.

Judgment Accordingly. Costs to be paid by Defendant Vytas Kisielius.

The Clerk is directed to deliver copies of this Decision/Order to the attorneys of record and to any party not represented by counsel.

IT IS SO ORDERED.

_____
James Stevenson, Judge

.suant to Civil Rule 58 (B),
.e Clerk of this Court is hereby
directed to serve upon all parties
ot in default for failure to
appear, notice of this judgement
and the date of entry upon the
its filing.
_____
Judge

11