[Cite as *New Technology Products Pty, Ltd. v. Scotts Miracle-Gro Co.*, 2022-Ohio-3780.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

NEW TECHNOLOGY PRODUCTS
PTY LTD.,

              CASE NO. 14-21-22

     PLAINTIFF-APPELLANT,

     v.

SCOTTS MIRACLE-GRO CO., ET AL.,       O P I N I O N

     DEFENDANTS-APPELLEES.

Appeal from Union County Common Pleas Court
Trial Court No. 2019-CV-0203

**Judgment Affirmed**

**Date of Decision:  October 24, 2022**

APPEARANCES:

    *Craig S. Tuttle* **for Appellant**

    *Marjorie P. Duffy* **for Appellees**

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant New Technology Products Pty. Ltd. ("NTP") appeals the judgment of the Union County Court of Common Pleas, raising several arguments against the trial court's decision to grant summary judgment to the defendants-appellees Scotts Miracle-Gro Co. ("SMG") and The Scotts Company LLC ("TSC") (collectively "the Appellees"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} NTP is an Australian company that "develops, manufactures, packages, and supplies products in various markets." Doc. 2. On November 8, 2019, NTP filed a complaint with the trial court. Doc. 2. NTP alleged that it had developed a proprietary wetting agent that could be combined with a lawn fertilizer, enabling the "fertilizer to better penetrate the soil * * *." Doc. 2. In 2005, NTP entered into an agreement with Scotts Australia Pty. Ltd. ("SAPL"), which is a "subsidiary or affiliate" of the Appellees. Doc. 2. Under this agreement, NTP was to combine its wetting agent with SAPL's products. Doc. 2. NTP alleges that this agreement did not allow SAPL to share this wetting agent with any of its affiliates or parent companies. Doc. 2.

{¶3} However, on October 1, 2016, NTP purchased products that were sold by the Appellees in the United States for testing. Doc. 2. NTP alleged that, on

November 30, 2016, subsequent testing revealed that these products contained NTP's wetting agent. Doc. 2. NTP alleged the Appellees "pressured and/or forced * * * [SAPL] to provide the Wetting Agent Information despite knowing it was subject to the confidentiality provision in the 2005 Agreement." Doc. 2. In its complaint, NTP then raised claims of misappropriation of trade secrets, unjust enrichment, and conversion. Doc. 2.

{¶4} On January 15, 2020, the Appellees filed their answer. Doc. 12. The Appellees "den[ied] that the wetting agent * * * constitutes proprietary technology or is a trade secret, that NTP otherwise has a protectable interest in the wetting agent, or that the Scotts Defendants improperly acquired, developed, or used information relating to the wetting agent * * *." Doc. 12. The Appellees also alleged that, "by no later than early 2015, NTP [had] expressed its belief that the Scotts Defendants may have or had improperly acquired, developed, or used information" regarding this wetting agent. Doc. 12. The Appellees then raised the statute of limitations as a defense to NTP's claims. Doc. 12.

{¶5} On February 13, 2020, the Appellees filed an unopposed motion for leave to file a motion for summary judgment before discovery. Doc. 21. On February 24, 2020, the trial court granted this motion. Doc. 23. On March 23, 2020, the Appellees filed their motion for summary judgment, arguing that the four-year statute of limitations for the claims raised by NTP had run by the time the filing of the complaint. Doc. 34. The Appellees attached an affidavit ("the Bresch

-3-

Affidavit") from Jeffrey J. Bresch ("Bresch") and five exhibits to their motion for summary judgment. Doc. 34, Ex. A-E. The Bresch Affidavit was filed to authenticate the documents that had been submitted as exhibits. Doc. 34.

{¶6} In his affidavit, Bresch stated that, before this present litigation had been commenced, he had served as counsel to the Appellees in their discussions with NTP. Doc. 34. He averred that the documents attached to the motion for summary judgment had been obtained by the Appellees from NTP and that the Appellees had forwarded these documents to him during the course of his representation. Doc. 34. On the basis of these attached exhibits, the Appellees argued that NTP knew or should have known about what it believed to have been misappropriation outside of the applicable statute of limitations. Doc. 34.

{¶7} On April 23, 2020, NTP filed its response to the motion for summary judgment. Doc. 37. Attached to its response was an affidavit ("the Dunbar Affidavit") from Karl Dunbar ("Dunbar"), who was the sole director of NTP. Doc. 37. On April 23, 2020, NTP also filed a motion to strike the Bresch Affidavit, arguing that Bresch's statements were not based upon personal knowledge as required by Civ.R. 56. Doc. 36. For this reason, NTP argued that the Bresch Affidavit could not authenticate the documents from NTP that were submitted by the Appellees with the motion for summary judgment and that the documents attached to the motion for summary judgment should also be stricken. Doc. 36.

{¶8} On May 8, 2020, the Appellees filed a reply brief and a motion to oppose NTP's motion to strike the Bresch Affidavit. Doc. 45. While maintaining that the Bresch Affidavit was sufficient to authenticate the exhibits attached to the motion for summary judgment, the Appellees made the following statement in their motion to oppose the motion to strike the Bresch Affidavit: "To the extent needed, Scotts hereby seeks leave to file a supplemental affidavit from Mark Sedor, the in-house lawyer at Scotts * * *." Doc. 45.

{¶9} On May 15, 2020, the Appellees filed a supplemental affidavit ("the Sedor Affidavit") from Mark Sedor ("Sedor") in support of their motion for summary judgment. Doc. 47. Sedor was the Director of Litigation for The Scotts Co., LLC. Doc. 47. In his affidavit, Sedor described how the Appellees came into possession of the documents from NTP that were attached as exhibits to the motion for summary judgment. Doc. 47. On May 22, 2020, NTP filed a motion to strike the Sedor Affidavit, arguing that this supplemental affidavit was filed after the deadline the trial court had set for the reply brief to have been filed. Doc. 50. NTP also requested leave to file a surreply to the Sedor Affidavit. Doc. 50.

{¶10} On October 1, 2021, the trial court issued its judgment entry. Doc. 65. The trial court granted the motion for leave to file the Sedor Affidavit for the limited purpose of authenticating the documents submitted as exhibits with the motion for summary judgment. Doc. 65. The trial court then denied NTP's motion to strike the Bresch Affidavit and the exhibits attached to the motion for summary judgment.

Doc. 65. Finally, the trial court found that the statute of limitations barred the misappropriation claims raised by NTP and granted summary judgment in favor of the Appellees.[1] Doc. 65.

{¶11} NTP filed its notice of appeal on October 29, 2021. Doc. 69. On appeal, NTP raises the following five assignments of error:

### First Assignment of Error

**The trial court erred in granting leave to submit a new summary judgment affidavit after briefing pursuant to a court-ordered schedule closed because the defendant-appellees failed to show the excusable neglect required by Civ.R. 6.**

### Second Assignment of Error

**The trial court erred in denying the plaintiff-appellant's motion to strike the summary judgment affidavit because the testimony therein was not based on personal knowledge as required by Civ.R. 56 and was inadmissible hearsay.**

### Third Assignment of Error

**The trial court erred in granting summary judgment based on the statute of limitations because the defendant-appellees' motion contained no admissible evidence and the defendant-appellees had the burden of proving that affirmative defense.**

### Fourth Assignment of Error

**In the alternative, the trial court erred in not providing plaintiff-appellant an opportunity to respond to the affidavit defendant-appellees submitted after summary judgment briefing closed.**

---

[1] In its judgment entry, the trial court determined that NTP's unjust enrichment and conversion claims were displaced by section R.C. 1333.67 of the Ohio Uniform Trade Secrets Act. Doc. 65.

**Fifth Assignment of Error**

**The trial court erred in granting summary judgment on the statute of limitations on plaintiff-appellant's trade secret claim because plaintiff-appellant submitted unrefuted evidence raising a genuine issue of fact as to 1) whether misappropriation even occurred prior to the statutory period and 2) whether plaintiff-appellant should have known about misappropriation prior to chemical testing.**

*First Assignment of Error*

{¶12} NTP argues that the trial court abused its discretion by granting the Appellees leave to file a supplemental affidavit from Mark Sedor.

Legal Standard

{¶13} "[S]upplemental evidence is a permissible tool to support a motion for summary judgment." *Kisielius v. Kisielius*, 3d Dist. Shelby Nos. 17-09-05, 17-09-11, 2009-Ohio-4624, ¶ 21. "Civ.R. 56(E) states that a 'court *may* permit affidavits to be supplemented or opposed by depositions or by further affidavits.'" (Emphasis added.) *Walter v. AlliedSignal, Inc.*, 131 Ohio App.3d 253, 263, 722 N.E.2d 164, 171 (3d Dist.). "The decision whether to permit the supplemental affidavit to be filed is a matter within the sound discretion of the trial court." *Unifirst Corp. v. Jeff Wyler Ford, Inc.*, 12th Dist. Clermont No. CA92-08-079, 1993 WL 7875, *2 (Jan. 19, 1993). *See Union Bank Co. v. Lampert*, 3d Dist. Auglaize No. 2-13-32, 2014-Ohio-4427, ¶ 34 ("[I]t is well within a trial court's discretion to order or allow parties to supplement their arguments in favor of or against summary judgment."); *Cashlink, L.L.C. v. Mosin, Inc.*, 10th Dist. Franklin No. 12AP-395, 2012-Ohio-

5906, ¶ 9 ("The decision to admit or exclude evidence, including affidavit testimony, is subject to review under an abuse of discretion standard."). *See also Conley v. Wapakoneta City School District Board of Education*, 3d Dist. Auglaize No. 2-12-18, 2022-Ohio-2915, ¶ 73 (Zimmerman, J., dissenting).

{¶14} Further, a trial court's decision as to whether a supplemental affidavit should be stricken is an "evidentiary challenge[]." *DeepRock Disposal Services, LLC v. Forté Productions, LLC*, 4th Dist. Washington No. 20CA15, 2021-Ohio-1436, ¶ 40 "Decisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review." *Id*. quoting *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22. "Under the abuse of discretion standard, an appellate court is not to substitute its judgment for the trial court's judgment." *Mousa v. Saad*, 3d Dist. Marion No. 9-18-12, 2019-Ohio-742, ¶ 29. "A mere error in judgment does not constitute an abuse of discretion." *Schwieterman v. Schwieterman*, 3d Dist. Logan No. 8-19-49, 2020-Ohio-4881, ¶ 12. "Rather, a determination that is arbitrary, capricious, or unreasonable is an abuse of discretion." *Id*.

Legal Analysis

{¶15} On March 13, 2020, after granting the Appellees leave to file a motion for summary judgment, the trial court issued a scheduling order that stated NTP had until April 23, 2020 to file a response to the motion for summary judgment and that stated the Appellees had until May 8, 2020 to file a reply brief. Doc. 29. On March

23, 2020, the Appellees filed a motion for summary judgment that had five attached exhibits. Doc. 34, Ex. A-E. The Appellees filed the Bresch Affidavit with the motion for summary judgment to authenticate the attached exhibits. Doc. 34.

{¶16} On April 23, 2020, NTP filed its response to the motion for summary judgment and a motion to strike the Bresch Affidavit. Doc. 36, 37. Both of these motions argued that the Bresh Affidavit was not based upon personal knowledge and could not, therefore, serve to authenticate the exhibits attached to the motion for summary judgment. Doc. 36, 37. NTP then argued that, since the attached exhibits were not properly authenticated, the Appellees had not presented any evidence in support of its motion for summary judgment. Doc. 37.

{¶17} On May 8, 2020, the Appellees timely filed their reply and a motion to oppose NTP's motion to strike the Bresch Affidavit. Doc. 44, 45. The Appellees' motion to oppose NTP's motion to strike contained the following motion: "To the extent needed, Scotts hereby seeks leave to file a supplemental affidavit from Mark Sedor, the in-house lawyer at Scotts who sent the June 2018 Letter to Bresch." Doc. 45. On May 15, 2020, the Appellees then filed the Sedor Affidavit. Doc. 47.[2] The trial court then granted this motion for leave on October 1, 2021, permitting the Sedor Affidavit to be filed for the "limited purpose of authenticating those documents that were also submitted with Jeffrey J. Bresch." Doc. 65.

---

[2] The Appellees filed the Sedor Affidavit with another motion for leave to file a supplemental affidavit. Doc. 47. However, the May 15, 2020 motion for leave expressly referred back to the motion for leave that was made in the May 8, 2020 motion to oppose NTP's motion to strike the Bresch Affidavit. Doc. 47.

{¶18} On appeal, NTP challenges the trial court's decision to grant the Appellees leave to file the Sedor Affidavit. NTP argues that the Appellees filed their motion for leave to file a supplemental affidavit after the May 8, 2020 deadline set by the trial court for filing their reply brief. NTP asserts that this means the Appellees, pursuant to Civ.R. 6(B)(2), had to show that their failure to file their motion for leave before May 8, 2020 "was the result of excusable neglect." Civ.R. 6(B)(2). Arguing that the Appellees did not demonstrate excusable neglect in their motion for leave, NTP asserts that the trial court erred in granting the Appellees leave to file the Sedor Affidavit.

{¶19} "Civ.R. 6 governs extensions of time * * *." *Wilson v. Sears Roebuck & Co.*, 5th Dist. Ashland No. 08-COA-017, 2009-Ohio-16, ¶ 24. Civ.R. 6(B)(2) reads, in its relevant part, as follows:

> **(B) Time: Extension. When * * * by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * (2) upon motion made *after the expiration of the specified period* permit the act to be done where the failure to act was the result of excusable neglect * * *.**

(Emphasis added.) Civ.R. 6(B)(2). "[T]he excusable neglect standard under Civ.R. 6(B)(2) is notably forgiving." *Huntington National Bank v. Haehn*, 2018-Ohio-4837, 125 N.E.3d 287, ¶ 26 (10th Dist.). "[A]n appellate court must uphold a ruling granting an extension absent an abuse of discretion." *Id.* at ¶ 27.

**{¶20}** In this case, the Appellees made a motion for leave to file a supplemental affidavit on May 8, 2020 in their motion to oppose NTP's motion to strike the Bresch Affidavit. Doc. 45. Thus, even if the May 8, 2020 deadline in the trial court's scheduling order had been applicable to motions for leave to file supplemental affidavits, the Appellees made a motion for leave to file the Sedor Affidavit *before* the expiration of this deadline in their motion to oppose NTP's motion to strike the Bresch Affidavit. Doc. 45. *See U.S. Bank, N.A. v. Martin*, 7th Dist. Mahoning No. 13 MA 107, 2014-Ohio-3874, ¶ 7 (considering a case in which a party, in its reply brief, reserved the right to file a supplemental affidavit). For this reason, we need not determine how Civ.R. 6(B)(2) interacts, as a general matter, with motions for leave to file supplemental affidavits that are made *after* the deadline for submitting a reply brief has expired. Since the Appellees made a motion for leave to file the Sedor Affidavit *before* the deadline for submitting a reply brief had expired, Civ.R. 6(B)(2) is not relevant to our evaluation of the motion for leave to file the Sedor Affidavit that was made in this particular case.[3]

**{¶21}** Further, "Civ.R. 56(E) states that a 'court may permit affidavits to be supplemented or opposed by depositions or by further affidavits.'" *Walter, supra*, at 263, quoting Civ.R. 56(E). As such, this determination is committed to the discretion of the trial court. *Id*. *See also Hartman v. Erie Insurance Company*,

---

[3] On appeal, NTP only makes arguments on the basis of the "excusable neglect" standard set forth in Civ.R. 6(B)(2). Since no other arguments relating to the other provisions within Civ.R. 6 were made, we will only consider the relevance of Civ.R. 6(B)(2) to the facts of this case.

2017-Ohio-668, 85 N.E.3d 454, ¶ 29 (6th Dist.) (holding that a "trial court has no duty to consider an untimely-filed affidavit, but may do so at its discretion"), citing *Widlar v. Young*, 6th Dist. Lucas No. L-05-1184, 2006-Ohio-868, ¶ 37.

**{¶22}** In this case, the Appellees made a motion for leave to file a supplemental affidavit on May 8, 2020. *See also Martin, supra*, at ¶ 7-8. The Sedor Affidavit was then filed one week after the Appellees made the motion for leave and roughly five months before the trial court rendered a decision on the motion for summary judgment. *See Demczyk v. Steamatic of Northeast Ohio, Inc.*, 5th Dist. Stark No. 2010CA00117, 2011-Ohio-1910, ¶ 32 (considering the "protracted procedural history" of the case in evaluating a trial court's decision to deny admission of a supplemental affidavit).

**{¶23}** Further, the Sedor Affidavit did not contain any new evidentiary materials or any new arguments. The Appellees made the motion for leave in response to the arguments challenging the Bresch Affidavit that were raised in NTP's response to the motion for summary judgment. *See Roush v. Butera*, 8th Dist. Cuyahoga No. 97463, 2012-Ohio-2506, ¶ 43. The Sedor Affidavit only sought to provide authentication for exhibits that had already been filed and was considered by the trial court for the limited purpose of authenticating those exhibits. Doc. 65. *See Feichtner v. Kalmbach Feeds, Inc.*, 3d Dist. Wyandot No. 16-04-09, 2004-Ohio-6048, ¶ 11 (finding that a supplemental affidavit was sufficient to authenticate a previously filed exhibit).

-12-

{¶24} NTP also has not directed us to a local rule that would have enjoined the Appellees from filing a supplemental affidavit at this juncture in the litigation. *See Martin, supra*, at ¶ 23 (considering the fact that no local rule would have prohibited the filing of a supplemental affidavit). *See also Yoder v. Morilo*, *Inc.*, 119 Ohio App.3d 257, 259, 695 N.E.2d 36, 37 (5th Dist. 1997). Under the facts of this particular case, we cannot conclude that the trial court erred and abused its discretion in granting the Appellees leave to file the Sedor Affidavit for the limited purpose of authenticating the exhibits that had been previously submitted with the motion for summary judgment.

{¶25} In conclusion, having examined the materials in the record, we cannot conclude that the trial court abused its discretion in granting the Appellees leave to file a supplemental affidavit under the facts of this case or in denying NTP's motion to strike. Since NTP's arguments do not establish that the trial court abused its discretion in permitting the Appellees to file the Sedor Affidavit, the first assignment of error is overruled.

*Second Assignment of Error*

{¶26} NTP raises two main arguments challenging the trial court's decision to deny NTP's April 23, 2020 motion to strike. First, NTP argues that the trial court should have stricken the Bresch Affidavit because it was not based on personal knowledge. For this reason, NTP argues that the Bresch Affidavit could not serve authenticate the documents attached as exhibits to the motion for summary

judgment. Second, NTP alternatively argues that, even if this Court concludes that the Bresch Affidavit is based on personal knowledge, the documents attached to the Bresch Affidavit as Exhibits A to E are inadmissible hearsay statements. We will consider these two arguments in separate analyses.

Legal Standard for the First Argument

**{¶27}** Appellate courts are to "decide each assignment of error" raised on appeal "unless an assignment of error is made moot by a ruling on another assignment of error * * *." App.R. 12(A)(1)(c). An issue is moot when it "involve[s] no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." *Culver v. City of Warren*, 84 Ohio App. 373, 83 N.E.2d 82 (7th Dist. 1948), quoting Borchard, Declaratory Judgments, at 35 (2d Ed. 1941). "Put differently, an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, 176 N.E.3d 720, ¶ 26.

Legal Analysis for the First Argument

**{¶28}** In this case, the Appellees submitted the Bresch Affidavit with the motion for summary judgment to authenticate five sets of documents that are labeled Exhibits A through E. Doc. 34, Ex. A-E. NTP then filed a motion to strike the Bresch Affidavit, arguing that Bresch did not have sufficient personal knowledge to

authenticate the five attached exhibits. Doc. 36. NTP further asserted that, in the absence of a properly framed affidavit, the attached exhibits could not be considered by the trial court in deciding the motion for summary judgment. Doc. 36.

**{¶29}** In response, the Appellees filed a supplemental affidavit from Mark Sedor, who was the Director of Litigation for the Appellees.[4] Doc. 47, Ex. 1. The Sedor Affidavit was submitted to authenticate the documents that had been previously submitted with the motion for summary judgment as Exhibits A, C, D, and E. Doc. 47, Ex. A, C-E. The document that had been submitted as Exhibit B with the motion for summary judgment was an unsigned affidavit that had been drafted for Dunbar ("the Dunbar Draft"). Doc. 36, Ex. B.

**{¶30}** In his affidavit, Bresch stated that he had received the Dunbar Draft in a binder of documents "from Sarah Davies Legal on behalf of NTP" during the course of discussions between the parties before this litigation was commenced. Doc. 34. The Dunbar Draft incorporated a number of attached documents that were labeled Exhibits KD-1 to KD-50. The motion for summary judgment referenced the materials attached to the Dunbar Draft in seeking to establish that NTP had come to the conclusion that misappropriation had occurred more than four years before this action was filed and that this action was barred by the statute of limitations.

---

[4] In this appeal, NTP only challenges the Bresch Affidavit on the grounds that it was not based on personal knowledge. While NTP asserted that the Appellees should not have been granted leave to file the Sedor Affidavit under the first assignment of error, NTP nowhere argues that the Sedor Affidavit was not based on personal knowledge or was insufficient to authenticate the documents submitted as exhibits with the motion for summary judgment. Accordingly, we will not examine whether the Sedor Affidavit was based upon personal knowledge or whether the Sedor Affidavit was insufficient to authenticate the challenged exhibits.

**{¶31}** However, the contents of the Dunbar Draft are largely duplicated by the contents of Exhibits A, C, D, and E. Doc. 34, Ex. A-E. Having examined the materials submitted by the Appellees with the motion for summary judgment, we conclude the contents of Exhibits A, C, D, and E provide a sufficient basis on which the merits of the motion for summary judgment can be determined. Further, the Sedor Affidavit was filed to authenticate the evidentiary materials that were submitted with the motion for summary judgment as Exhibits A, C, D, and E. Doc. 47. Under the first assignment of error, we concluded that the trial court did not err in allowing the Appellees to file the Sedor Affidavit.

**{¶32}** Since Exhibit B is not necessary to determine the motion for summary judgment and the remaining exhibits are authenticated by the Sedor Affidavit, we conclude that, even if the trial court had granted NTP's motion to strike the Bresch Affidavit in its October 1, 2021 judgment entry, there is no indication that such a determination would have any impact on the outcome of this case. For this reason, our decision under the first assignment of error has made resolution of this argument unnecessary to the disposition of this case. Accordingly, we decline to answer the question of whether the Bresch Affidavit was based upon personal knowledge.

Legal Standard for the Second Argument

**{¶33}** To prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists for trial by "point[ing] to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in

rendering summary judgment." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264, 273 (1996). These evidentiary materials include "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." Civ.R. 56(C). Materials that are not listed in Civ.R. 56(C) "may be introduced as evidentiary material supporting a motion for summary judgment where it is incorporated by reference in a properly framed affidavit." *Polanco v. Asbestos Corp., LTD*, 3d Dist. Paulding No. 11-07-13, 2009-Ohio-85, ¶ 14.

**{¶34}** However, "[o]nly facts that would be admissible in evidence can be relied upon by the trial court when ruling on a motion for summary judgment." *Wolk v. Piano*, 8th Dist. Cuyahoga No. 94850, 2011-Ohio-1065, ¶ 26. *See also McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 7; *Havely v. Franklin Cty.*, 10th Dist. Franklin No. 07AP-1077, 2008-Ohio-4889, ¶ 24, citing *Tokles & So, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 605 N.E.2d 936, fn. 4 (1992); *Koop v. Speedway SuperAmerica*, *LLC*, 12th Dist. Warren No. CA2008-09-110, 2009-Ohio-1734, ¶ 6.

**{¶35}** In general, "[h]earsay is not admissible * * *." Evid.R. 802. Under Evid.R. 801(C), "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Thus, "[a]bsent an exception, hearsay may not be considered in a motion for summary judgment."

*Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 9. *See also*

*Bendele v. Geise*, 3d Dist. Putnam No. 12-02-05, 2002-Ohio-6272, ¶ 15; *Martin v.*

*Wandling*, 2016-Ohio-3032, 65 N.E.3d 103, ¶ 69-72 (4th Dist.); *Re v. Kessinger*,

12th Dist. Butler No. CA2007-02-044, 2008-Ohio-167, ¶ 42.

{¶36} Evid.R. 801 contains several categories of statements that do not

qualify as hearsay. Evid.R. 801(D). Evid.R. 801(D)(2) states that the following

qualify as non-hearsay statements:

> **(2) Admission by Party-Opponent. The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship * * *.**

Evid.R. 801(D)(2). Evid.R. 801(D) has been applied in evaluating the admissibility

of documents. *Mowery v. Columbus*, 10th Dist. Franklin No. 05AP-266, 2006-

Ohio-1153, ¶ 59. *See also State ex rel. Mohr v. Colerain Township*, 2022-Ohio-

1109, 188 N.E.3d 1107, ¶ 32 (1st Dist.); *Reinbolt v. Kern*, 183 Ohio App.3d 287,

2009-Ohio-3492, 916 N.E.2d 1100, ¶ 29 (6th Dist.); *Kock v. Ohio Acres4U LLC*,

2018-Ohio-2763, 115 N.E.3d 748, ¶ 39 (7th Dist.); *Ball v. Consol. Rail Corp.*, 142

Ohio App.3d 748, 756, 756 N.E.2d 1280, 1286 (8th Dist. 2001).

> **[T]he pivotal inquiry for admission of a statement under Evid.R. 801(D)(2)(d) is whether the statement was made by an agent or employee of the party-opponent, during the existence of the**

> **relationship, concerning a matter within the scope of the employment or agency.**

*Bromall v. Select Specialty, Hospital—Akron, L.L.C.*, 2022-Ohio-2496, 193 N.E.3d 609, ¶ 39 (8th Dist.), quoting *Davis v. Sun Refining and Marketing Co.*, 109 Ohio App.3d 42, 53 671 N.E.2d 1049, 1057 (2d Dist. 1996).

> **'In keeping with the liberal policy of admitting statements under Evid.R. 801(D)(2), the fact and scope of the agency can be proven through circumstantial evidence.' [*Ball* at 756.] Moreover, in determining the scope of an agent's authority, a court may consider the content of the alleged admission itself.**

*Mowery* at ¶ 59. Further, "[f]or a statement to qualify as an admission of a party-opponent, the agency relationship need not encompass authority to make damaging statements but requires only the authority to take action concerning the subject matter of the statements." *Id.*

**{¶37}** The decision to grant or deny a motion to strike is committed to the discretion of the trial court. *Metcalfe v. Ultimate Systems, Ltd.*, 3d Dist. Allen No. 1-06-29, 2006-Ohio-5835, ¶ 27. Thus, "[a]ppellate review of a trial court's decision to grant or deny a motion to strike is under an abuse of discretion standard." *Mason v. Recchie*, 3d Dist. Union No. 14-07-46, 2008-Ohio-1144, ¶ 8. "A mere error in judgment does not constitute an abuse of discretion. Rather, a determination that is arbitrary, capricious, or unreasonable is an abuse of discretion." *Schwieterman, supra*, at ¶ 12, citing *Worden v. Worden*, 3d Dist. Marion No. 9-16-54, 2017-Ohio-8019, ¶ 26.

Legal Analysis for the Second Argument

**{¶38}** NTP argues that the exhibits submitted by the Appellees with the motion for summary judgment do not contain admissible evidence and that the trial court erred by failing to strike these documents. The Sedor Affidavit was filed to authenticate four of the five exhibits that were submitted with the motion for summary judgment. Thus, this argument challenges the exhibits that were authenticated by the Sedor Affidavit and formed the basis of the trial court's decision to grant summary judgment in this case. While we need not consider the challenge to the Bresch Affidavit that was raised in this assignment of error, we must address the challenge to the admissibility of the exhibits authenticated by the Sedor Affidavit. Doc. 47. The Sedor Affidavit was submitted to authenticate the documents that had been attached to the motion for summary judgment as Exhibits A, C, D, and E. Doc. 47. We will consider the admissibility of each of these exhibits.

**{¶39}** Sedor averred that Exhibit A was a letter that was dated June 25, 2018 ("June 2018 Letter") and had been received by the Appellees at "the beginning of July 2018." Doc. 47. The June 2018 Letter was addressed to the President of Scotts Miracle-Gro and to the Chairman of the Board of Directors of Scotts Miracle-Gro. Doc. 34, Ex. A. The sender, James Scott, opened the letter by stating that he "represent[ed] New Technology Products Pty Ltd (NTP) and Karl Dunbar, the Managing Director of NTP." Doc. 34, Ex. A. He requested that the Appellees

participate in mediation regarding the alleged misappropriation of NTP's trade secrets. Doc. 34, Ex. A. The text of the June 2018 Letter also indicated that a copy of this communication had been sent to Dunbar. Doc. 34, Ex. A.

{¶40} The June 2018 Letter also included a Submission that set forth a detailed timeline of the relationship between NTP and the Appellees. Doc. 34, Ex. A. As part of this timeline, the Submission contained several entries that documented how and when NTP came to its belief that the Appellees had misappropriated trade secrets. Doc. 34, Ex. A. The June 2018 Letter stated that the "Submission [had been] prepared by NTP's Australian lawyers, Sarah Davies Legal, [and] contain[ed] crucial evidence supporting the assertions made by NTP." Doc. 34, Ex. A. As a component of the June 2018 Letter, the Submission was filed with the motion for summary judgment as part of Exhibit A. Doc. 34, Ex. A.

{¶41} The contents of the June 2018 Letter indicate that James Scott was a "representative" of NTP and Dunbar and was tasked with the responsibility of contacting the Appellees for the purpose of initiating mediation talks.[5] Doc. 34, Ex. A. As part of this process, James Scott represented the positions that NTP held on a number of issues to the Appellees. These positions were also the proposed subjects of the requested mediation. Doc. 34, Ex. A. The record indicates that the

---

[5] NTP filed an affidavit from Dunbar ("Dunbar Affidavit") with its response to the motion for summary judgment. Doc. 37. In his affidavit, Dunbar confirms that James Scott was "my business consultant" and was involved in the "attempt to reach a settlement" with the Appellees. Doc. 37. *See also Tabor v. Westfield Companies*, 4th Dist. Gallia No. 97CA05, 1998 WL 90899, *6 (Feb. 27, 1998) (finding no abuse of discretion where a trial court admitted a letter written by an agent of the defendant).

June 2018 Letter resulted in mediation talks occurring between NTP and the Appellees over the allegations set forth by James Scott. Doc. 34.[6] The record also indicates that the Appellees subsequently relied on the representations in the June 2018 Letter in preparing for the requested mediation talks. Doc. 34, 47. Thus, the record indicates that the June 2018 Letter played the role in this dispute that its contents suggest it was intended to play.

{¶42} Further, James Scott stated, in the June 2018 Letter, that the Submission had been included to provide the "crucial evidence supporting" the positions taken by NTP Doc. 47, Ex. A. The June 2018 Letter indicated that the representations contained in this Submission had been "prepared by NTP's lawyers * * *." *See Boddie v. Van Steyn*, 10th Dist. Franklin No. 13AP-623, 2014-Ohio-1069, ¶ 13. ("It is well-settled that the relationship between an attorney and client is that of an agent and a principal."). Importantly, NTP nowhere argues that the June 2018 Letter and Submission are not what these documents purport to be. NTP also does not challenge the authenticity of these documents or the accuracy of the representations contained therein. Based on these facts, we conclude that the trial court did not abuse its discretion in finding the documents comprising Exhibit A to be admissible under Evid.R. 801(D)(2).

---

[6] The Bresch Affidavit states: "In November 2018, I met with NTP's representatives at a hotel in Denver, Colorado to discuss the allegations in the June 2018 Letter." Doc. 34. In an affidavit filed by NTP, Dunbar states that he "attempted to resolve NTP's issues with Scotts without resort to litigation, starting in July 2018. On November 14, 2018, I met in Denver, Colorado with Jeffrey Bresch of Jones Day, representing Scotts, with my business consultant, Jim Scott, to mediate issues surrounding Scotts' misappropriation of NTP's intellectual property * * *." Doc. 37.

**{¶43}** We turn now to Exhibits C, D, and E. In support of its assertions, the Submission included with the June 2018 Letter referenced a number of documents that included contracts, emails, letters, minutes of meetings, and brochures. Doc. 47, Ex. A. The Submission referred to these documents as attachments KD-1 to KD-34. Doc. 47, Ex. A. In his affidavit, Sedor explained that the Appellees had not received any attachments with the June 2018 Letter or the Submission. Doc. 47. The Sedor Affidavit then avers the following:

> **On July 12, 2018, I emailed James Scott—the sender of the June 2018 Letter who was identified in the June 2018 Letter as NTP's business consultant—and notified him that Scotts had received the June 2018 Letter from NTP, but that the attachments referenced in the June 2018 Letter were missing. I requested that Mr. Scott send me copies of the attachments to assist in my review of the June 2018 Letter. In response, Mr. Scott emailed me copies of the attachments.**

Doc. 47. Sedor included copies of the email exchange in which he requested and received attachments KD-1 to KD-34 from James Scott. Doc. 47, Ex. B.

**{¶44}** The Appellees submitted several of the attachments that were emailed from James Scott to Sedor with their motion for summary judgment as Exhibits C, D, and E. Doc. 34, Ex. C-E; 47, Ex. C-E. Exhibit C was attachment KD-21 and was a July 8, 2014 Letter ("July 2014 Letter") from Dunbar to the Chairman of the Board of Directors of Scotts Miracle Gro Company. Doc. 34, Ex. C. This document was printed on NTP letterhead and contains Dunbar's signature and contact

information. Doc. 34, Ex. C.[7] The July 2014 Letter stated that "a chronology of the relationship between NTP and Scotts Australia" was attached. Doc. 34, Ex. C. This chronology detailed events that transpired from 1998 to 2014. Doc. 34, Ex. C.

{¶45} Exhibit D was attachment KD-22 and was a copy of "the minutes from an August 5, 2014 meeting between NTP and Scotts Australia * * *." Doc. 34, Ex. D.[8,9] Finally, Exhibit E was attachment KD-24 and was a copy of "the minutes from a February 18, 2015 meeting between NTP and Scotts Australia." Doc. 34, Ex. E. The minutes were printed on Shelston, LP letterhead and dated February 18, 2015.[10] Doc. 34, Ex. E. The Submission included with the June 2018 Letter states that Dunbar had "sought legal advice from Shelston IP Lawyers * * *." Doc. 34, Ex. A.

{¶46} The Sedor Affidavit establishes that the Appellees obtained these documents directly from James Scott, a "representative" of NTP and Dunbar. Doc. 34, Ex. A, B. The June 2018 Letter and Submission indicate that these referenced documents were compiled by NTP's attorneys for the purpose of supporting the positions NTP had taken in the June 2018 Letter. Doc. 34, Ex. A. Further, James Scott wrote the June 2018 Letter to request that the Appellees participate in

---

[7] In his affidavit submitted with NTP's response to summary judgment, Dunbar states that he "sent a letter to Mr. Hagedorn in July 2014 regarding the drop off in NTP's relationship with SAPL." Doc. 37.
[8] We note that Exhibit D was only cited by the Appellees on one occasion in the motion for summary judgment as confirmation of a statement that was made in Exhibit C. Doc. 34, Ex. C, D.
[9] The Dunbar Affidavit confirms that Dunbar attended a meeting on August 5, 2014 with SAPL. Doc. 37.
[10] In the affidavit submitted with NTP's response to the motion for summary judgment, Dunbar stated the following: "On February 18, 2015, I met again with Mr. Martin; Shelston attorneys also attended this meeting * * *. At this time, I strategically accused SAPL and Scotts of using NTP's Wetting Agent outside the limits of the 2005, 2011, and 2013 Agreements * * *." Doc. 37. The contents of the minutes submitted as Exhibit E are consistent with the statements in the Dunbar Affidavit. Doc. 34, Ex. E; 37. The Dunbar Affidavit also indicates that NTP "retained Shelston IP Lawyers" in this timeframe. Doc. 37.

mediation talks with NTP. Doc. 34, Ex. A. The documents later submitted as Exhibits C, D, and E were sent directly from James Scott to the Appellees to support the positions that NTP was going to take in those proposed mediation talks. Thus, the trial court could conclude that James Scott was acting in furtherance of the objectives stated in the June 2018 Letter when he presented these documents to the Appellees. *See Home Insurance Company v. Envirotech Corporation*, 1st Dist. Hamilton No. C-830834, 1984 WL 7030, *3 (Oct. 31, 1984). As a concluding matter, we note that NTP nowhere challenges the accuracy or authenticity of the documents that were submitted by the Appellees as Exhibits C, D, and E. *See Davis v. Schneider*, 11th Dist. Lake No. 9-165, 1983 WL 6030, *3 (Dec. 23, 1983).

{¶47} Having examined the documents that were attached as Exhibits A, C, D, and E to the motion for summary judgment, we conclude that the trial court did not abuse its discretion in finding that these exhibits were admissible under Evid.R. 801(D)(2). For this reason, we also conclude that the trial court did not abuse its discretion in denying NTP's motion to strike the exhibits that the Sedor Affidavit was filed to authenticate. Accordingly, NTP's second assignment of error is overruled.

*Third Assignment of Error*

{¶48} NTP argues that the trial court erred in granting summary judgment because the Appellees did not present any admissible or properly authenticated evidence in support of their motion for summary judgment.

Legal Standard

**{¶49}** "Appellate courts consider a summary judgment order under a de novo standard of review." *Schmidt Machine Company v. Swetland*, 3d Dist. Wyandot No. 16-20-07, 2021-Ohio-1236, ¶ 23, citing *James B. Nutter & Co. v. Estate of Neifer*, 3d Dist. Hancock No. 5-16-20, 2016-Ohio-7641, ¶ 5. Under Civ.R. 56,

> **[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law * * *. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.**

Civ.R. 56(C). Accordingly, summary judgment is to be granted

> **only when it is clear '(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.'**

*Beair v. Management & Training Corp.*, 3d Dist. Marion No. 9-21-07, 2021-Ohio-4110, ¶ 15, quoting *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47 (1978).

**{¶50}** Initially, "[t]he party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to

judgment as a matter of law." *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 370, 1998-Ohio-389, 696 N.E.2d 201, 204 (1998). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Neal v. Treglia*, 2019-Ohio-3609, 144 N.E.3d 1045, ¶ 12 (3d Dist.), quoting *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13.

{¶51} If the moving party carries this initial burden, "[t]he burden then shifts to the party opposing the summary judgment." *Bates Recycling, Inc. v. Conaway*, 2018-Ohio-5056, 126 N.E.3d 341, ¶ 11 (3d Dist.), quoting *Middleton v. Holbrook*, 3d Dist. Marion No. 9-15-47, 2016-Ohio-3387, ¶ 8. "In order to defeat summary judgment, the nonmoving party may not rely on mere denials but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, quoting Civ.R. 56(E).

{¶52} "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution." *Williams v. ALPLA, Inc.*, 2017-Ohio-4217, 92 N.E.3d 256, ¶ 6 (3d Dist.), quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138 (1992). "The court must thus construe all evidence and resolve all doubts in favor of the non-moving party * * *." *Webster v. Shaw*, 2016-Ohio-1484, 63 N.E.3d 677, ¶ 8 (3d Dist.).

Legal Analysis

**{¶53}** The success of NTP's argument in the third assignment of error depends upon the success of its arguments in the first and second assignments of error. Under its first two assignments of error, NTP argued that the trial court erred by failing to strike the affidavits from Bresch and Sedor. If these two affidavits had been stricken as requested by NTP, then the documents attached to the motion for summary judgment as Exhibits A, C, D, and E would not have been accompanied by an authenticating affidavit. NTP correctly asserts that, in the absence of an authenticating affidavit, the trial court could not have considered the attached exhibits as evidence on summary judgment. *Ocwen Loan Servicing, LLC v. Graf*, 10th Dist. Franklin No. 17AP-361, 2018-Ohio-2411, ¶ 27 ("Documents that are 'not sworn, certified, or authenticated by affidavit have no evidentiary value' and cannot be considered by the trial court on summary judgment unless 'the opposing party has raised no objection.'"), quoting *Emerson Family Ltd. Partnership v. Emerson Tool, L.L.C.*, 9th Dist. Summit No. 26200, 2012-Ohio-5647, ¶ 15. On the basis of the argument that the trial court should have stricken the affidavits from Bresch and Sedor, NTP now argues that the Appellees did not, in effect, submit any evidence in support of the motion for summary judgment and that the trial court could not have concluded that the Appellees had met the initial burden on summary judgment.

**{¶54}** However, under the first assignment of error, we concluded that the trial court did not abuse its discretion in denying the motion to strike the Sedor

Affidavit. The Appellees filed the Sedor Affidavit to authenticate the documents that were attached to the motion for summary judgment as Exhibits A, C, D, and E. Doc. 47. Thus, regardless of whether the Bresch Affidavit should have been stricken, Exhibits A, C, D, and E were accompanied by an authenticating affidavit. Accordingly, this case does not present us with a situation in which documents were submitted to the trial court in the absence of an authenticating affidavit. Further, in the second assignment of error, we concluded that the trial court did not abuse its discretion in finding Exhibits A, C, D, and E to be admissible as evidence.

{¶55} In conclusion, NTP's only argument under this assignment of error is that, "[b]ecause the trial court should have granted NTP's Motion to Strike, it should also have denied Scotts' Summary Judgment Motion." Appellant's Brief, 15. Since we determined that the trial court did not abuse its discretion in denying the motion to strike the Sedor Affidavit, the documents attached to the motion for summary judgment as Exhibits A, C, D, and E were accompanied by an authenticating affidavit. Thus, based on our resolution of the first and second assignments of error, we conclude that the argument presented herein is without merit. Since NTP has presented no other argument under this assignment of error, NTP has failed to establish that the trial court erred in concluding that the Appellees had carried the initial burden on summary judgment. For this reason, NTP's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶56}** NTP argues that the trial court should have permitted it to file a response to the Sedor Affidavit.

Legal Standard

**{¶57}** "An appellant has the burden of affirmatively demonstrating the error of the trial court assigned on appeal." *Hall v. Crawford County Job and Family Services*, 2022-Ohio-1358, 188 N.E.3d 1138, ¶ 36. However, "[c]laimed error alone may not support reversal; the party assigning error must demonstrate prejudice resulting therefrom." *Messer v. Summa Health System*, 2018-Ohio-372, 105 N.E.3d 550, ¶ 22 (9th Dist.), quoting *Cincinnati Ins. Co. v. Thompson & Ward Leasing Co.*, 158 Ohio App.3d 369, 2004-Ohio-3972, 815 N.E.2d 1126, ¶ 19 (10th Dist.). Thus, "[i]n order to support reversal of a judgment, the record must show affirmatively not only that error intervened but that such error was to the prejudice of the party seeking such reversal." *Smith v. Flesher*, 12 Ohio St.2d 107, 233 N.E.2d 107 (1967), paragraph one of the syllabus.

Legal Analysis

**{¶58}** In this case, the trial court allowed the Sedor Affidavit to be "filed for the limited purpose of authenticating those documents that were also submitted with the Affidavit of Jeffrey J. Bresch" and the motion for summary judgment. Doc. 65. The Sedor Affidavit did not introduce new evidentiary materials or new arguments into this litigation. Rather, the Sedor Affidavit only functioned to authenticate a

series of documents that had already been submitted to the trial court as exhibits with the motion for summary judgment. *See Deutsche Bank National Trust Company as Trustee for American Home Mortgage Assets Trust 2007-2, Mortgage-Back Pass-Through Certificates Series 2007-2 v. Ayers*, 2020-Ohio-1332, 153 N.E.3d 452, ¶ (11th Dist.) (finding that, where a new argument is raised in a reply brief, "the proper procedure is to strike the reply or, alternatively, to allow the opposing party to file a surreply"). The record indicates that the Appellees filed this supplemental affidavit only to address the arguments NTP raised against the Bresch Affidavit in its response to the motion for summary judgment and in its motion to strike the Bresch Affidavit. Doc. 36, 37. *See Ayers* at ¶ 47-48.

{¶59} In response, NTP filed a motion to strike the Sedor Affidavit that raised a number of arguments against the admission of this supplemental affidavit. Doc. 50. Thus, NTP had the opportunity challenge the Sedor Affidavit. These arguments were considered and found to be without merit. Further, since the Sedor Affidavit did not introduce new arguments or evidentiary materials, NTP had already had the opportunity, in its response to the motion for summary judgment, to challenge the evidentiary materials and arguments that formed the basis of the trial court's decision to grant summary judgment. Doc. 37. These arguments were considered and found to be without merit. On appeal, NTP raised arguments that challenged the trial court's decision to grant leave to file the Sedor Affidavit. This Court has considered these arguments and found them to be without merit.

{¶60} In this assignment of error, NTP has not explained what arguments it would have raised in a response that it did not have the opportunity to raise in its motion to strike, in its response to the motion for summary judgment, or in this appeal. In fact, NTP has not delineated any of the arguments that it would have raised in a response to the Sedor Affidavit. For these reasons, we conclude that NTP has not demonstrated that it was prejudiced by the trial court's decision not to grant the motion for leave to file a response to the Sedor Affidavit.

{¶61} In conclusion, NTP has challenged the Sedor Affidavit and the documents it purports to authenticate on multiple occasions during the course of this litigation. These arguments were considered and found to be without merit. Further, NTP's brief does not provide any description of any of the arguments that it would have raised in a response. NTP also has not identified a rule that would have arguably required the trial court to grant NTP the opportunity to file a response to the Sedor Affidavit under the facts of this case. For these reasons, we conclude that NTP has not established that it was prejudiced by the trial court's decision not to grant the motion for leave to file a response to the Sedor Affidavit. Accordingly, NTP's fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶62} NTP argues that, even if the trial court did not err in considering the materials attached to the motion for summary judgment, it still carried the reciprocal burden of establishing that a genuine issue of material fact exists for trial.

Legal Standard

{¶63} We herein reincorporate the legal standard for summary judgment as set forth under the fourth assignment of error. Further, Chapter 1333 of the Revised Code contains Ohio's Uniform Trade Secrets Act ("OUTSA"). R.C. 1333.61(B) defines "misappropriation" as "any of the following:"

**(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;**

**(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:**

**(a) Used improper means to acquire knowledge of the trade secret;**

**(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;**

**(c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.**

R.C. 1333.66(B). R.C. 1333.66 provides the limitations period for misappropriation actions under OUTSA and reads as follows:

**An action for misappropriation shall be commenced within four years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the**

**purposes of this section, a continuing misappropriation constitutes a single claim.**

R.C. 1333.66. "'Discovery' as used here requires 'knowledge of such facts as would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry.'" *Adcor Indus., Inc. v. Bevcorp*, *LLC*, 252 Fed.Appx. 55, 60 (6th Cir. 2007), quoting *Hambleton v. R.G. Barry Corp*., 12 Ohio St.3d 179, 465 N.E.2d 1298, 1300-01 (1984), quoting *Schofield v. Cleveland Trust Co*., 149 Ohio St. 133, 78 N.E.2d 167, 172 (1948).

**{¶64}** Thus, under R.C. 1333.66, "[t]he discovery rule requires the owner of a trade secret to conduct a timely and reasonable investigation after learning of possible misappropriation * * *." *Stolle Machinery Co., LLC v. RAM Precision Industries*, 605 Fed.Appx. 473, 482 (6th Cir. 2015), quoting *Adcor Indus., Inc.* at 62. "The discovery rule is wholly consistent with the nature of trade secrets; because trade secrets are not subject to a filing system, owners' diligence in taking affirmative steps to protect them is crucial." *Adcor Indus., Inc.* at 62 (examining whether there was "sufficient reason * * * to suspect" misappropriation more than four years before the complaint was filed in applying the statute of limitations under OUTSA).

Legal Analysis

**{¶65}** On appeal, neither party disputes that the law governing this issue is R.C. 1333.66 and that this statute sets forth a four-year statute of limitations for

misappropriation claims.   Appellant's Brief, 18; Appellees' Brief, 16.   In this assignment of error, NTP raises two arguments in an effort to establish that it carried the burden of establishing that a genuine issue of material fact for trial on the issue of the statute of limitations in its response to summary judgment.

**{¶66}** First, NTP argues that the trial court could not have determined that the statute of limitations has run because the Appellees "never demonstrated when [they] * * * began using NTP's technology * * *."  Appellants Brief, 18.  However, R.C. 1333.66 states that the statute of limitations begins to run when "the misappropriation is discovered" or when, "by the exercise of reasonable diligence," the misappropriation "should have been discovered."  R.C. 1333.66.  Under this discovery rule in R.C. 1333.66, the statute of limitations does not begin to run when the misappropriation occurs but when the misappropriation is discovered or should have been discovered.  *See Stolle, supra,* at 482 ("[T]he first discovered (or discoverable) misappropriation of a trade secret commences the limitation period * * *."), quoting *Amalgamated Indus. Ltd. v. Tressa, Inc.*, 69 Fed.Appx. 255, 261 (6th Cir. 2003).  Thus, to apply the statute of limitations in this case, the trial court did not need to know precisely when the alleged misappropriation began.[11]  *See also Kehoe Component Sales, Inc. v. Best Lighting Products, Inc.*, 796 F.3d 576, 583 (6th Cir. 2015) (holding that "OUTSA's limitations period runs not from each time

---

[11] We also note that, in this case, the alleged misappropriation occurred before its discovery.  If the statute of limitations was tied to when the alleged misappropriation began, this would tie the statute of limitations to an earlier date than the one that was used by the trial court in this case.

that a trade secret is used, but from the first moment of its reasonably discoverable misappropriation").

{¶67} Second, NTP argues that it "submitted evidence that created a genuine issue of material fact as to whether it should have known about misappropriation prior to 2015." Appellant's Brief, 21. As an initial matter, we note that NTP filed a complaint on November 8, 2019. Doc. 1. Thus, to carry the initial burden on summary judgment, the Appellees needed to present evidence that established that NTP was aware or should have been aware of the alleged misappropriation four years before the filing of the complaint on November 8, 2019. The Appellees were not required to establish that NTP was aware or should have been aware of the alleged misappropriation "prior to 2015." Appellant's Brief, 21.

{¶68} To establish that the statute of limitations for NTP's claims had run, the Appellees attached several documents as exhibits to their motion for summary judgment. Doc. 34. Exhibit A was the June 2018 Letter. Doc. 34, Ex. A. This letter stated that, "[a]s detailed in the [attached] Submission, there is evidence that demonstrates that SAPL and Scotts USA have deliberately misappropriated the Trade Secrets and Intellectual Property owned by NTP." Doc. 34, Ex. A. The Submission contained a timeline of various events that included the following:

> **58. In 2014, Mr. Dunbar became concerned about some issues with the manufacturing contract with SAPL. When he was not able to resolve these with the newly appointed CEO of SAPL, Andrew Martin, he sent a letter dated 8 July 2014 to Scotts US Chief Executive Officer and Chairman of the Board, Jim**

> **Hagedorn informing him that there were very concerning issues involving SAPL and NTP. Attachment 'KD-21' is a copy of that letter.**

Doc. 34, Ex. A. The Appellees submitted Attachment KD-21 ("July 2014 Letter") with their motion for summary judgment as Exhibit C. Doc. 34, Ex. C. The July 2014 Letter had a chronology of the business relationship between the Appellees and NTP from 1998 to 2014. Doc. 34, Ex. C. This chronology contained the following statement:

> **There have been many very disappointing management decisions made by Scotts Miracle-Gro Company in Australia over the last few years. These were far from ethical and more concerning, have made the relationship with NTP potentially untenable.**

> **The most concerning issue is why Scotts Asia Pacific Head of Supply Chain, was caught in the premise of NTP photographing Intellectual Property. This Head of Supply Chain has spent the last 3 years assisting Wuhan, China in setting up manufacturing and continually maintains that he only reports to the Scotts Miracle-Gro Company Head Office in Ohio.**

Doc. 34, Ex. C. Next, the Submission included with the June 2018 Letter contained the following entries:

> **59. On 5 August 2014, a meeting took place between Mr. Martin and Mr. Dunbar. * * * At the conclusion of the meeting, Mr. Martin confirmed that he would be undertaking a strategic review of all supplier contracts and asked Mr. Dunbar to come back to him with an information memorandum setting out a phase down option and a continuation option.**

> **60. As a result of these events and advice given to Mr. Dunbar * * * to the effect that SAPL did not intend to renew the contract, NTP sought legal advice from Shelston IP Lawyers in Sydney. Mark Vincent at Shelston IP Lawyers, acting on NTP's behalf,**

**wrote to SAPL on 24 November 2014 for the purpose of negotiating further with SAPL with a view to ending the relationship. * * ***

**61.  In the meantime, Mr. Dunbar was alerted to the possibility that misuse of NTP Intellectual Property and Trade Secrets by Scotts USA was more extensive than he has originally thought.  In particular, he became aware through internet searches that Scotts USA franchise trucks were branded with the Water Smart logo. This was the product that Corbin Rily had assured Mr. Dunbar did not contain NTP technology.**

**62.  On 25 January 2015, Mr. Dunbar flew to the USA and visited Los Angeles, Salt Lake City, Dallas, Las Vegas, Columbus Ohio and Phoenix and investigated the trucks himself and established that Scotts USA was promoting a wetting agent.  Mr. Dunbar also visited outlets in each city and viewed Scotts USA products that he suspected contained NTP Trade Secrets and Intellectual Property.**

**\* \* \***

**64.  On 18 February 2015, a meeting took place between Mr. Dunbar, NTP's solicitor Mark Vincent, Andrew Martin and Nik Radia from SAPL.  Attachment 'KD-24' is a copy of the Minutes of that meeting.  Nothing was resolved in terms of moving forward in relation to NTP's ownership of the intellectual property.**

Doc. 34, Ex. A.  The Appellees submitted Attachment KD-24 ("February 2015 Minutes") to the motion for summary judgment as Exhibit E.  Doc. 34, Ex. E.  The February 2015 Minutes read, in relevant part, as follows:

**Karl said, the [wetting agent] technology was transferred to the US * * *.  We'll have to take it up with the US.  Mark said, Karl has undertaken a chemical analysis of the US products.**

**\* \* \***

> **Another issue which NTP will document is, given the uniqueness of the Wetting Agent and that Karl has found an identical wetting agent in Scotts US products, whether the presence of the identical wetting agent is down to coincidence or whether there has been an unauthorised exchange of confidential information. That may give a different complexion on how to resolve the issues between the parties.**
>
> **\* \* \***
>
> **The uniqueness of the Wetting Agent may give rise to different discussions. It may be that, in light of that use, which has not been paid for, the parties can determine the value of the Wetting Agent for the past and the future. It leads back to the same question.**
>
> **\* \* \***
>
> **We're discussing the value of the innovation. Some of the past correspondence and chemical analysis suggest the Wetting Agent has been used in the US. This is potentially relevant to the same point, what is the innovation worth?**

Doc. 34, Ex. E. Based upon these exhibits, the trial court concluded that NTP "discovered or should have discovered the misappropriation of a trade secret as early as July 2014, but certainly by February 2015." Doc. 65.

{¶69} With its response to the motion for summary judgment, NTP submitted an affidavit from Dunbar. Doc. 37. In his affidavit, Dunbar averred the following:

> **On February 18, 2015, I met again with Mr. Martin; Shelston attorneys also attended this meeting (the February 2015 Meeting). At this time, I strategically accused SAPL and Scotts of using NTP's Wetting Agent outside the limits of the 2005, 2011, and 2013 Agreements to gain leverage during negotiations given Mr. Martin's prior assertion that he did not believe SAPL's relationship with NTP could be sustained beyond the remaining**

> **two years in the initial term of the 2013 Agreement. Yet, I had not at that point performed any chemical analysis of Scotts' products to identify the presence of NTP's Wetting Agent.**

Doc. 37. The Dunbar Affidavit then states that, "[o]n November 8, 2016, NTP submitted Scotts' products for carbon 13 nuclear magnetic resonance (C-13 NMR) testing at the NuMega Resonance Labs." Doc. 37.

{¶70} However, in their motion for summary judgment, the Appellees presented evidence indicating that, in 2014, NTP reported its belief to the Appellees that pictures of NTP's intellectual property had been taken by the Head of Supply Chain for Scotts Asia Pacific. Doc. 34, Ex. C. *See Campfield v. Safelite Group, Inc.*, 2022 WL 721772, *4 (S.D. Ohio 2022).[12] Further, the Submission indicates that "Dunbar was alerted to the possibility that misuse of NTP Intellectual Property and Trade Secrets by Scotts USA was more extensive than he has originally thought * * *" in the timeframe of late 2014 to early 2015. Doc. 34, Ex. A. The Submission also indicates that Dunbar was taking steps to investigate the alleged misappropriation in January of 2015, flying to the United States from Australia to examine products offered by the Appellees in at least six different cities. Doc. 34, Ex. A. The Appellees also presented evidence that Dunbar, at a meeting in February of 2015, accused the Appellees of misappropriating NTP's trade secrets. Doc. 34, Ex. E. The minutes from this meeting further indicated that NTP represented to the

---

[12] We are aware that, at this time, an appeal of the decision in *Campfield* is pending before the United States Court of Appeals for the Sixth Circuit.

Appellees "that Karl [Dunbar] ha[d] found an identical wetting agent in Scotts US products * * *." Doc. 34, Ex. E.

{¶71} In evaluating NTP's response to summary judgment, we initially note that the Dunbar Affidavit corroborates the fact that he accused the Appellees of misappropriating NTP's wetting agent at a meeting in February 2015 ("the February 2015 Meeting"). Doc. 37. But beyond this, the Dunbar Affidavit does not question the truth or accuracy of the representations contained in Exhibits A, C, D, and E. Doc. 37. Dunbar does not address the pictures that were taken of NTP intellectual property by Scotts Asia Pacific Head of Supply Chain. Doc. 37. He also does not address his trip to the United States in January of 2015 during which he, according to the Submission prepared by NTP's attorneys, "investigated the trucks himself" and "viewed Scotts USA products that he suspected contained NTP Trade Secrets." Doc. 34, Ex. A. Thus, the Dunbar Affidavit does not put into dispute any of the key facts on which the trial court based its decision to grant summary judgment.

{¶72} NTP also asserts that it did not perform a specific kind of testing that could conclusively confirm that the Appellees engaged in misappropriation until November of 2016. NTP argues that, since these test results were obtained within four years of the initiation of this action, the statute of limitations does not bar its claims. However, under R.C. 1333.66, the four-year statute of limitations begins to run when "the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." R.C. 1333.66. In *Adcor Industries, Inc. v.*

*Bevcorp, LLC*, the Sixth Circuit Court of Appeals, in applying OUTSA's four-year statute of limitations, relied on the definition of "discovery" that the Ohio Supreme Court set forth in *Schofield v. Cleveland Trust Co., supra*, at 172. *Adcor Indus., Inc., supra*, at 62. The Ohio Supreme Court defined "[d]iscovery" as "knowledge of such facts as would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry." *Id.*, quoting *Hambleton, supra*, at 1300-1301, quoting *Schofield, supra*, at 172.

**{¶73}** In this case, the record indicates that the facts of which NTP had knowledge actually led Dunbar and NTP to begin investigating the alleged misappropriation of the wetting agent more than four years before the complaint was filed on November 8, 2019. Doc. 2. In January 2015, Dunbar flew from Australia to the United States to investigate and inspect several of the Appellees' products in six cities. Doc. 34, Ex. A. Further, the materials presented by the Appellees with the motion for summary judgment establish that NTP had reached the conclusion that the Appellees had misappropriated the wetting agent by February of 2015. In fact, Dunbar was confident enough in this conclusion that he was, by his own admission, willing to accuse the Appellees of misappropriation in the February 2015 Meeting. Doc. 37. Thus, under the definition set forth in *Schofield*, NTP had discovered the alleged misappropriation more than four-years before this action was commenced. *Schofield, supra*, at 172.

**{¶74}** While NTP asserts that it did not have conclusive proof that misappropriation had occurred until this specific test was conducted in November of 2016, a plaintiff need not be aware of "all the relevant facts that [are] necessary to file a claim * * *" for the discovery rule to apply. *See Herrick v. Zaghlool*, 3d Dist. Crawford No. 3-22-02, 2022-Ohio-2994, ¶ 14, quoting *Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284, 1287 (1992). The testing that occurred in November of 2016 may have furthered NTP's investigation into the alleged misappropriation of the wetting agent but did not mark the discovery of the alleged misappropriation. Since the testing in November of 2016 came after NTP had already concluded that its wetting agent had been misappropriated, the statute of limitations did not arguably begin to run in November of 2016. Thus, under the circumstances of this case, the fact that NTP did not complete a specific form of testing until late in 2016 is not relevant to establishing whether NTP complied with the statute of limitations.

**{¶75}** Having examined the arguments raised in NTP's response to the motion for summary judgment and the contents of the Dunbar Affidavit, we conclude that NTP has failed to carry the reciprocal burden of establishing that a genuine issue of material fact exists regarding the statute of limitations in this case. Thus, in these arguments, NTP has not demonstrated that the trial court erred in granting summary judgment to the Appellees. NTP's fifth assignment of error is overruled.

*Conclusion*

**{¶76}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Union County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/hls**